## NOONAN VS. ILSLEY.        ●

An instrument in the following form: "Due to J. A. N. three hundred dollars in Watertown Railroad stock," must be understood as an agreement to pay so much stock of the kind described as will amount, *at its par value*, to three hundred dollars.

The measure of damages for a failure, by the maker of such instrument, to deliver the stock on demand, is the value of the stock at the time of such demand, and interest.

APPEAL from the Circuit Court for *Milwaukee* County.

Action on the following due bill: "Due to *Josiah A. Noo nan*, three hundred dollars in Watertown Railroad stock. Milwaukee, March 22, 1856. CHARLES F. ILSLEY." The complaint alleges that on the 22d of June, 1856, the plaintiff demanded of the defendant three hundred dollars in stock of the Milwaukee and Watertown Railroad company (which, it is averred, is the stock meant to be described in said due bill), which the defendant refused to pay, to the damage of the plaintiff $300. The answer alleged that on the 22d of March, 1856, the plaintiff agreed to convey to the defendant certain lots in the city of Milwaukee by a good and perfect title in fee, free from all incumbrances except certain outstanding leases; and the defendant agreed to pay the plaintiff therefor $1000 in money and ten shares of the capital stock of said M. & W. R. R. Co., said shares being of the nominal value of $100 each, though they were in fact not of any greater value than $50 each; that the plaintiff executed a conveyance of such lots to the defendant, with full covenants of warranty except

as to the leases aforesaid; that the defendant thereupon paid therefor the sum of money agreed upon, and all the stock except three shares, and gave the plaintiff a memorandum in writing expressing, or intended to express, his obligation to deliver said remaining three shares, in pursuance of said agreement. The answer then alleges a breach of the covenant against incumbrances in the plaintiff's said deed, in that there was, at the time of its execution, an outstanding mortgage for $3,872, which covered two of the lots conveyed by said deed, along with other real property; which mortgage remained an incumbrance on said lots until November 25th, 1857. The answer further alleges that the defendant did not know of the existence of said mortgage on said 22d of March, 1856; that after he had ascertained its existence he refused, for that reason, to deliver to the plaintiff said remaining three shares of stock, and notified the plaintiff that he would not deliver them until the lots should be freed from said mortgage; and that after the discharge of said incumbrance, he had at all times been, and still was, ready and willing to deliver said stock, but that the plaintiff had refused to receive the same. The answer then sets up, by way of counter-claim, the breach of the plaintiff's covenant against incumbrances, with additional allegations to show actual damage, which need not be here stated. By a supplemental answer, the defendant also alleged a breach of the plaintiff's covenant of seizin, as to a part of the lots described in his deed. The plaintiff replied in denial. On the trial, the breach of covenant against incumcumbrances was admitted as alleged in the answer; and there was conflicting evidence as to the alleged breach of the covenant of seizin. After the introduction of testimony by both parties to sustain the allegations of their respective pleadings, and after they had rested, the court refused to instruct the jury, as requested by the defendant, "that in estimating the value of the stock for the purpose of determining the damages for the defendant's failure to deliver it, they must take its value

at the date of the due bill." It then instructed the jury that the defendant was only entitled to nominal damages for the breach of the covenant against incumbrances; that if there had been a breach of the covenant of seizin, he was only entitled to nominal damages therefor; and that if the plaintiff had demanded of the defendant the stock mentioned in the due bill, he was entitled to recover $300, with legal interest from the time of such demand, less the nominal damages to which the defendant was entitled for the breach " of said covenants.

Verdict for the plaintiff, for $436.28. The court, on motion of the defendant, set aside the verdict and granted a new trial; and from this decision the plaintiff appealed.

*Jenkins & Hickcox*, for appellant, contended that the measure of the plaintiff's damages for the failure to deliver the stock on demand, was the sum expressed in the due bill, with legal interest from the time of the demand, citing Evans' Pothier on Obligations, 46, 47, Nos. 347, 497; Chipman on Contracts, 35, 36; Edwards on Bills, 723, et seq.; *Pinney vs. Gleason*, 5 Wend., 393; *Rockwell vs. Rockwell*, 4 Hill, 164; *Gilbert vs. Danforth*, 2 Selden, 585; *Vance vs. Bloomer*, 20 Wend., 196; *Rice vs. Churchill*, 2 Denio, 145; *Kelly vs. Kelly*, 3 Barb., 419; *Smith vs. Smith*, 2 Johns., 135; *Newman vs. McGregor*, 5 Ohio, 394; *Trowbridge vs. Holcomb*, 4 Ohio, 38; *Brooks vs. Hubbard*, 3 Conn., 58; *Perry vs. Smith*, 22 Vt., 301; *Baker vs. Mair*, 12 Mass., 121; *Mettler vs. Moore*, 1 Blackf., 342; and see *Dutch vs. Warren*, cited and adopted as law by Lord MANSFIELD in *Moses vs. Macferlan*, 2 Burr., 1011. The class of cases in Indiana and other states cited by the respondent, where notes are given payable in greatly depreciated bank bills, stands upon an entirely different footing. For where a party makes a note payable in a depreciated currency, he declares in substance that the nominal amount is not the amount due; whereas a note for a specific amount, payable in specific articles, shows on its face the true amount of the indebtedness;

and is supposed to have been given in that form for the accommodation of the maker. Edwards on Bills, 752. This distinction is observable in Indiana, where most of the cases of this kind have arisen. *Mettler vs. Moore*, 1 Blackf., 342. Extrinsic testimony cannot avail to control or vary the legal effect of the note. *Gregory vs. Hart*, 7 Wis., 532.

*Wells & Brigham*, for respondent :

The measure of damages, on a breach of the contract, is the value of the stock to be delivered, at the time of the failure. We are aware that the rule seems well established that in the case of notes for a certain sum of money, payable in specific articles, as salt, cattle, lumber, &c., such as are in frequent use in some of the eastern states, the measure of damages is the amount of money specified in the note. It is held that the contract is for the payment of a certain sum of money, with the privilege to the promissor to fulfil by the delivery of the specified articles at the maturity of the note. This rule is held to carry out the intention of the parties. But another rule prevails and is equally well settled in reference to another class of notes payable in something else than money, such as those payable in the notes of a particular bank, or in notes current at a particular bank, certificates of stock, militia certificates, notes of other parties, and other paper which is measured and described by dollars. In all these cases it is held that the contracts are not for the payment of money, but for the delivery of a certain number or amount of certificates or notes, and that the money specified in the note is used to describe and define the amount of such certificates or notes, which are denominated in that way and in no other, and that the measure of damages is the value of the specified notes or certificates at the time of the failure, and not the amount of the money named in the note. And this is held to carry out the intention of the parties in this species of contract. *Anderson vs. Ewing*, 3 Litt., 245 ; *Gordon vs. Parker*, 2 S. & M., 485 ; *Clay vs. Huston*, 1 Bibb, 461 ; *Parks vs. Marshall*, 10 Ind., 20 ;

*Hixon vs. Hixon*, 7 Humph., 33 ; *Hedges vs. Gray*, 1 Blackford, 216 ; *Wilson vs. Hickson*, id., 230 ; *Osborne vs. Fulton*, id., 233 ; *Van Vleet vs. Adair*, id., 346 ; Sedgwick on Damages, 241.

*By the Court*, COLE, J.   As a matter of course, if the court committed any errors in its rulings or instructions, it was proper to grant a new trial.   We are of the opinion that it did not adopt the correct rule of damages.   The defendant below requested the court to instruct the jury that the measure of damages for failure to deliver the stock was the value of the stock at the time of such failure, and interest.   The court refused to give this instruction, but told the jury that the plaintiff was entitled to recover the sum of $300, with legal interest from the time of such demand, less the nominal damages to which the defendant was entitled by reason of the breach of the covenant against incumbrances and seizin.

The action was brought upon an instrument which read as follows:   "Due to *Josiah A. Noonan* three hundred dollars in Watertown R. Road stock.   Milwaukee, 22d March, 1856. CHARLES F. ILSLEY."   The question is, whether the amount of money mentioned in the note, with interest, is the proper measure of damages, or the price of railroad stock of the nominal value of three hundred dollars, at the time of the breach of the contract.

It must be admitted that the decisions of the different states upon this subject are far from being uniform ; some holding that where a note is payable in specific articles at a stipulated price, the party is entitled to recover, on a breach of the contract, the sum specified in the note, and not the actual value of the articles on the day of payment ; while others hold that the actual value of the articles, and not the stipulated sum, is the true measure of damages.   See Edwards on Bills and Prom. Notes, p. 723 ; *Pinney v. Gleason*, 5 Wend., 393 ; *Smith vs. Smith*, 2 Johns., 235 ; *Vance v. Bloomer*, 2 Wend., 196 ; *Rockwell v. Rockwell*, 4 Hill, 164 ; *Gilbert v. Danforth*, 2 Seld., 585 ;

*Baker v. Mair*, 12 Mass., 121 ; *Brooks v. Hubbard*, 3 Conn., 58 ; *Perry v. Smith*, 22 Vt., 302 ; *Newman vs. McGregor*, 5 Ohio, 349 ; *Mettler vs. Moore*, 1 Blackf., 342 ; *Coats and Hedges vs. Gray*, 1 Blackf., 216 ; *Wilson vs. Hickson*, id., 230 ; *Osborne vs. Fulton*, id., 253 ; *Van Vleet vs. Adair*, id., 346 ; *Parks vs. Marshall*, 10 Ind., 20 ; *Gordon vs. Parker*, 2 S. & M., 485 ; *Hixon vs. Hixon*, 7 Humph., 33 ; *Clay vs. Huston*, 1 Bibb, 461 ; *Anderson vs. Ewing*, 3 Littell, 245 ; *Price vs. Justrobe*, Harper (S. C.), 111 ; *Wilson vs. George*, 10 N. H., 445. In this state we have no decisions upon the point, and therefore are at liberty to adopt the construction which we think will most fully effectuate the intention of the parties. And according to our construction of the instrument, the respondent agreed and is bound to pay so many dollars in the stock of the company as, when counted at par, will amount to three hundred dollars. This we think is the meaning of the contract. If the stock is appreciated above par, the payee is to be benefited by the increased value ; and if depreciated, he is then to be restricted to three hundred dollars in amount, although worth less than that sum of money. The authorities above cited abundantly show that where the instrument, like the one at bar, is to be paid in bank notes, or in stock or scrip in the similitude of bank notes, then the market value of the notes, stock or scrip is the measure of damages. And the reason given for the rule is, that where a party engages to pay so many dollars in bank notes, stock or scrip, the articles are described and numerically calculated by the number they express, so that three hundred dollars in railroad stock or bank notes is understood to mean that amount as expressed upon the face of the stock or notes, and not an amount which will be equivalent in value to three hundred dollars in money ; while an instrument drawn for the payment of so many dollars in chattels—wheat, salt, cloth, wool and other like articles—is construed to mean so much of those things as will amount to the sum in money, because the things themselves cannot be counted by dollars, as the name is never applied to

them.   2. Pars. on Contr., Part 2, chap. 8; *Anderson v. Ewing*, *supra*.   And this explains why this instrument was drawn in the manner it was; because three hundred dollars of stock is understood to mean that number of dollars as expressed upon the face of the certificate.   See also Sedgwick on the Meas. of Damages, chap. 8, p. 253 (3d Ed.)   We universally speak of so many dollars of railroad stock without any reference to its actual cash value, because it is convenient to count and describe it in this manner.

For these reasons we think the order of the circuit court granting a new trial was correct, and must be affirmed.