WHEELER and another, Ex'rs, vs. HARTSHORN and others, imp.

CONSTRUCTION OF WILL: APPEAL. *(1, 2) Action to construe will; notice of appeal, on whom to be served. (3) Certain legacies held general and demonstrative. (4, 5) How such legacies payable. (6) How a devise of a certain amount of testator's land to be executed.*

1. In an action by an executor to obtain construction of a will, where he merely sets out the will, or its doubtful clauses, states the adverse claims of the parties interested, and asks the court to determine the true construction, leaving the whole matter to be litigated by the parties interested (who are made defendants), the complaint is *in the nature of a bill of interpleader;* and notice of an appeal by a part of the defendants from a judgment of the court construing the will, should be served *on the other defendants*, interested adversely to the appellants.

2. But where, all the legatees being made defendants, certain of them were interested adversely to the residuary legatees, and the executors, by their complaint, asked the court to give the will that construction which was most favorable to such residuary legatees, who did not exhibit any cross bill against their codefendants, or take any equivalent proceeding tendering to them an issue on the construction of the will, but left the question to be litigated on the complaint and the answer of such codefendants, and the latter appealed from the judgment: *Held*, that service of notice of appeal *upon the executors* was sufficient.

3. A testator owning 3,700 acres of land in P. and S. counties in this state, with other real estate, and also U. S. bonds, railroad mortgage bonds, municipal bonds, notes secured by mortgage, and unsecured notes, etc., to the aggregate nominal value of over $100,000, but appraised at only

$53,000, made the following among other devises and bequests: to his nephew A. "eight thousand dollars in bonds or notes secured by mortgage; also 400 acres of my land in P. or S. county;" to his nephew B. "eight thousand dollars in bonds or notes and mortgage securities, also 400 acres of my land in P. or S. county;" to his nieces C. and D. each "the sum of four thousand dollars in bonds or notes secured by mortgage;" to E. "the sum of one thousand dollars in coupon railroad bonds." *Held,*

(1) That the legacies above described are not specific, but *general, demonstrative* legacies.

(2) That in determining whether payment of such legacies is to be made at the par value of the securities, or at their market value, the intention of the testator is to govern; and as the will itself does not clearly express that intention, it is to be construed in the light of surrounding circumstances.

(3) Whether the legacies are to be paid in those securities of the designated kinds *which came to the hands of the executors,* it was not necessary to decide.

4. The testator made ample provision for his widow and two brothers, besides making them his residuary legatees; he appears not to have left any other relatives nearer than nephews and nieces, and of the numerous legacies to these, far the largest are the ones above described. It appears that when he made his will he believed that his railroad bonds would always be at par. In the residuary clause of the will was this provision: "Any property or money standing charged on my books against any of the aforementioned legatees, from and after this date, my executors will deduct from sums bequeathed them by this will." Shortly before making the will, the testator told one of the executors that it would be very easy to comply with the requirements of his will; that all the executors would have to do would be to hand over the different securities to the different parties. *Held,* in view of all the facts and circumstances, that it was the testator's intention to bequeath to the several legatees the several sums named, *in money or its equivalent;* and if the securities designated in the will for that purpose are insufficient to pay them, the deficiency must be paid, with the other general legacies, out of the remaining estate of the testator.

5. In the view here taken of the will, it is immaterial whether the legacies be *paid in the designated securities,* or whether the latter be sold by the executors, and the *proceeds* applied in payment of the legacies.

6. The court below adjudged that under the several devises of land above described, each devisee was entitled to the fee simple of the specified quantity of land in severalty, the same to be selected by the executors, and to be of the average quality and value of the testator's lands in the

two counties named. The devisees claimed that each of them was en-
titled to *an undivided share* of *all* the lands of which the testator died
seized in said counties, the extent of such undivided interest being deter-
mined by the proportion which the number of acres devised to each bore
to the whole of said lands. *Held,* that as the court will compel the
executors to make a proper and just selection of the land, and will fully
protect the devisees, its judgment is *equivalent* to assigning to each of
them the undivided interest claimed, and will not, in that respect, be
disturbed.

APPEAL from the Circuit Court for *Fond du Lac* County.
Action to obtain judicial construction of certain clauses in
the will of the plaintiffs' testator.

In May, 1874, Richard Catlin, late of the county of Fond
du Lac, died, leaving his last will and testament, which was
duly admitted to probate by the proper court in July follow-
ing. The plaintiffs are named therein as executors, and have
duly qualified and entered upon the discharge of their duties
as such.

The testator, at the time of his decease, was the owner of
thirty-seven hundred acres of land in Pierce and St. Croix
counties in this state, together with other real estate; also of
United States bonds, railroad mortgage bonds, municipal
bonds, notes secured by mortgage, and unsecured notes against
numerous persons, and of certain cash assets consisting of
money or certificates of deposit and drafts. The following is
a statement of the nominal value, and also of the appraised
value, of such securities, obligations and assets, rejecting frac-
tions of a dollar:

|  | Nominal. | Appraised at |
|---|---|---|
| U. S. Bonds, | $3,000, | $3,000 |
| City Bonds, | 16,000, | 1,500 |
| R. R. Bonds, | 33,000, | 7,730 |
| Notes secured by mortgage, | 38,145, | 30,000 |
| Unsecured notes and interest, | 4,443, | 4,443 |
| Cash assets, | 6,856, | 6,856 |
| Total, | $101,444, | $53,529 |

Of the above city bonds, $10,000 were specifically bequeathed to the widow of the testator.

Among devises or bequests in said will to all of the defendants respectively, are the following to the appellants:

" I give and bequeath to my nephew *Horace P. Hartshorn*, of Hamilton, N. Y., eight thousand dollars in bonds or notes secured by mortgage. Also five [four?] hundred acres of my land in Pierce or St. Croix county, of this state.

" I give and bequeath to my nephew *Thomas C. Hartshorn*, eight thousand dollars in bonds or notes and mortgaged security. Also four hundred acres of my land in Pierce or St. Croix county, Wis.

" I give and bequeath to my niece *Caroline P. Keeler*, the sum of four thousand dollars in bonds or notes secured by mortgage.

" I give and bequeath to my niece *Anna Foster*, the sum of four thousand dollars in bonds or notes secured by mortgage.

" I give and bequeath to *Miss Livia S. Hatch*, daughter of F. H. Hatch, the sum of one thousand dollars in coupon railroad bonds."

The residuary clause of the will is as follows: " The balance and residue of all my personal and real estate left after paying all the legacies as aforementioned, and all expenses, I give and bequeath, one-third to my wife, Phoebe Ellen Catlin, one-third to George Catlin, and one-third to Francis P. Catlin. Any property or money standing charged on my books against any of the aforenamed legatees, from and after this date, my executors will deduct from sums bequeathed them by this will."

The foregoing facts are stated in the complaint in this action, and are not controverted. The relief demanded is, that the court give construction to several clauses in the will, and among these, that the above devises and bequests to the appellants be construed as follows:

" That the legacy to *Horace P. Hartshorn*, of eight thousand

dollars in bonds or notes secured by mortgage, be adjudged a general legacy, payable in any bonds taken at their face, regardless of the actual or market value of said bonds, to be selected by the executors, or in notes secured by mortgage, at the discretion and selection of the executors.

"That the devise to said *Horace P. Hartshorn*, of 'four hundred acres of my land in Pierce or St. Croix county of this state,' be adjudged specific, and may be satisfied with four hundred acres of said testator's land situated in either of said counties, at the discretion and selection of the executors.

"That the legacy and devise to *Thomas C. Hartshorn* have a like construction, and the executors a like discretion and power of selection.

"That the bequest to *Caroline P. Keeler* be adjudged a general legacy, and may be satisfied either in any bonds taken at their face, regardless of the actual or market value of said bonds, or in notes secured by mortgage, at the discretion and selection of the executors.

"That the bequest to *Anna Foster* have a like construction, and that the executors have a like discretion and power of selection.

"That the bequest to *Miss Livia S. Hatch* be adjudged a general legacy, payable in any coupon railroad bonds taken at their face, regardless of the actual or market value of said bonds, at the selection of the executors."

Several of the defendants (other than the appellants), interposed answers to the complaint of the executors, taking issue on certain averments in such complaint, but not on any averment therein affecting the appellants.

The appellants joined in an answer, wherein they claimed that the bequests to them respectively of certain sums in bonds or notes secured by mortgage, and the like, were bequests of those sums absolutely, payable in the securities named at their actual value, and, in default of sufficient securities for that purpose, the balance payable in money.

The appellants *Horace P.* and *Thomas C. Hartshorn* each further claimed that he was entitled to a conveyance of an undivided interest, equivalent to the quantity of land devised to him, in all of the lands in Pierce and St. Croix counties of which the testator died seized.

The will contains several other bequests of specific sums in bonds or other securities, and it is alleged in the appellant's answer that the actual value of the securities named is sufficient to pay all such bequests, including those to the appellants. The court found, however, that the actual value thereof was insufficient for that purpose.

The circuit court gave to the will the construction claimed by the executors in respect to the several bequests to the appellants, and adjudged in that behalf as follows:

" That the devise of four hundred acres of land in Pierce or St. Croix county to *Horace P. Hartshorn*, of Hamilton, N. Y., and also the devise of four hundred acres of land in Pierce or St. Croix county, Wisconsin, to *Thomas C. Hartshorn*, entitles each of the defendants to a title in fee simple of four hundred acres of land of the lands of which the testator died seized in said two counties, of an average quality and value of all the lands of which the testator was so seized at his death in both said counties, to be selected by the *executors* plaintiff.

" The bequest to *Livia S. Hatch* of one thousand dollars in coupon railroad bonds, entitles her to that sum in bonds at the face value of said bonds, and not their money value; said bonds to be, as near as may be, of an average value of those railroad bonds owned by the testator at the time of his death, to be selected by the executors.

" The bequest of eight thousand dollars to *Horace P. Hartshorn*, in bonds or notes secured by mortgage, the bequest of eight thousand dollars to *Thomas C. Hartshorn*, in bonds or notes and mortgage security, the bequest of four thousand dollars in bonds or notes secured by mortgage, to *Caroline P.*

*Keeler*, the bequest of four thousand dollars in bonds or notes secured by mortgage, to *Anna Foster*, entitles each of the legatees so named, or their assigns, to the specific amounts to them or her specially bequeathed in bonds or mortgages, or bonds or notes secured by mortgages, of an average value of all the bonds and mortgages, or bonds and notes secured by mortgages, owned by the testator at the time of his death (except the five thousand dollar note and mortgage executed by O. J. Clark and Jehdiah Bowen and their wives, and bequeathed to Phœbe Ellen Catlin), to be taken at their face value, to be selected by the executors."

*Horace P.* and *Thomas C. Hartshorn*, *Caroline P. Keeler*, *Anna Foster* and *Livia S. Hatch* appealed from the portions of the judgment above quoted.

Two briefs were filed for the appellants, one signed by *Gillet & Hammond*, and the other by *James R. Doolittle*, of counsel. A brief for the respondents was filed by *Runals & Lane* as their attorneys, and one by *C. L. Catlin* as attorney for the residuary legatees. The cause was argued orally by *Mr. Gillet* and *Mr. Doolittle* for the appellants, and by *Mr. Runals* and *E. S. Bragg* for the respondents.

The following points and authorities are taken from the brief of *Gillet & Hammond:*

The bequests to the appellants were all general legacies, of the kind known as *demonstrative;* because they are bequests of the several sums of money named, while they point out in each case a fund, or a class of securities or property, as the source from which the money is to be derived. *Walton v. Walton*, 7 Johns. Ch., 262; Willard's Eq., 502; *Malone v. Mooring*, 40 Miss., 247; 2 Redfield on Wills, ch. 1, sec. 7; *Ellis v. Walker*, Ambler, 309; *Cartwright v. Cartwright*, cited in 2 Bro. Ch., 114; *Paget v. Hurst*, 9 Jur., N. S., 906; *Mullins v. Smith*, 8 Weekly Rep., and 1 Drewry & Sm:, 204; *Sellon v. Watts*, 9 Weekly Rep., 847. General legatees are entitled to priority over the residuary legatees under all cir-

cumstances and as to every portion of the estate. *Mollan v. Griffith*, 3 Paige, 402; 2 Wms. on Ex'rs, 1223; 2 Redf., ch. 4, sec. 28, and ch. 1, sec. 7, pl. 18; Willard's Eq., 504. Ademption does not apply to general or demonstrative legacies.   7 Johns. Ch., 262; *Malone v. Mooring, supra.*  A change may be made in the thing given by procuring a like kind of thing, without ademption. *Pattison v. Pattison*, 1 Mylne & K., 12.   Nor does ademption take place when the change is made by operation of law.   *Walton v. Walton, supra;* 2 Redf., ch. 4, sec. 26, pl. 20; *Beck v. McGillis*, 9 Barb., 35; *Gilbreath v. Winter*, 10 Ohio, 64; *Cogdell's Ex'rs v. His Widow*, 3 Desauss., 346, 384; *Hansbrough's Ex'rs v. Hooe*, 12 Leigh, 316.   2. It was not the province of the executors to select the securities with which to pay the bequests.   2 Redf., 136, note 19, ch. 1, sec. 7, citing *Jacques v. Chambers*, 2 Coll. C. C., 435.

*Mr. Doolittle*, on the same side, argued, 1. That the testator could not have intended to make the amount and value of the legacies to the appellants depend upon the depreciation of railway bonds, because it is clear from the evidence that he believed such a depreciation impossible.   See *Roberts v. Pocock*, 4 Ves., 156, 159.   2. That the will, by its express terms, after making ample, unconditional provision for the widow and the other persons who are also named as residuary legatees, provided that any depreciation of his estate which might occur, should be borne by the residuary legatees.   The language is: " The balance and residue of all my personal and real estate *left after paying all the legacies as aforementioned* and all expenses, I give and bequeath," etc.   The intention is clear.   3. That the legacies to the appellants were not specific.   (1) If A. had agreed to deliver to B. $8,000 in bonds and notes secured by mortgage, can it be doubted that A. would be bound to deliver $8,000 *worth* of such bonds or notes, or that, in default of such delivery, B. could recover $8,000 in cash?   (2) If this testator had converted all

Wheeler and another, Ex'rs, vs. Hartshorn and others, imp.

his notes and bonds into cash before his death, would that have *adeemed* these legacies, and given all the estate to the residuary legatees? This is the crucial test of a specific legacy. Willard's Eq., 506. Legacies will not be treated as specific unless such is the clearly expressed intention of the testator. *Walton v. Walton,* 7 Johns. Ch., 263; Willard's Eq., 505. 4. That these legacies were of a fixed sum of money, with reference to a particular fund for payment; what are called by the civilians *demonstrative* legacies. Willard's Eq., 502. In support of these views counsel further cited *Ashburner v. Macguire,* 2 Bro. C. C., 108; *Coleman v. Coleman,* 2 Ves. Jr., 640; *Chaworth v. Beech,* 4 id., 556; *Innes v. Johnson,* id., 573; *Kirby v. Potter,* id., 750; *Sibley v. Perry,* 7 id., 524; *Webster v. Hale,* 8 id., 411; *Deane v. Test,* 9 id., 146; *Gillaume v. Adderley,* 15 id., 384; *White v. Winchester,* 6 Pick., 48; *Foote v. Worthington,* 22 id., 299; opinion of Johnson, J., in *Tifft v. Porter,* 4 Seld., 518, and the cases there cited; *Pierrepont v. Edwards,* 25 N. Y., 131; 2 Redfield on Wills, ch. 13, sec. 7.

For the respondents it was argued, in the brief of *Runals & Lane,* that a construction of the will which is impossible or extremely difficult of performance, should be rejected in favor of one which is possible and easily practicable. Bacon's Max., 52; Potter's Dwarris, 174; 19 N. Y., 348; 5 McLean, 178; Dev. Ct. of Claims R., 158; 10 Wheat., 210. With the exception of ten for $100 each, all the bonds are in sums of $500 or $1,000 each; so that if they are taken at their face, every legacy may be paid exactly with one or more of them; while if they are taken at their cash value, no number of them will exactly pay any legacy. And that value is forever changing, and may change even while you are making the computation; while the par value is fixed. There would always be trouble, in any state of the market, in making payment of even thousands in bonds for $500 and $1,000 each, taken at their cash value; there could be none, in any state of the

market, in paying at their face. All this was known to the testator. He had dealt in bonds for some time, had bought and sold at various prices, as shown by his books put in evidence; he then owned $85,000 in bonds, and knew that they were as likely to be at any one of fifty figures as at par. Yet he said to one of his executors: "It will be easy to comply with the terms of the will. All you will have to do will be to hand over the securities." Could he have been thinking of handing them over at their cash value? So of the mortgages. There are seventeen bequests of this character, and not one can be paid exactly by any one or more of the mortgages at their appraised value. But these bequests are not made in money, but in the securities; and the *denomination of the security*, not its money value, is the measure of the legacy. The testator must be presumed to have used language as it is commonly used in speech and writing. If one should say he had bought, or sold, or lost, "$10,000 in bonds," no one would suppose that he had paid, received or lost that precise money value. We read in a newspaper that the Northampton bank has been robbed, and that "$720,000 in bonds" were taken by the robbers. Does any one suppose that this is the money value? If you promised to get $5,000 in government bonds for a friend, neither he nor any one else would suppose that you were to get him just $5,000 worth. So if one should promise to pay $5,000 in bonds and failed, he would be liable to pay only what bonds amounting on their face to that sum were worth in cash. 12 Ill., 184; 1 Bibb, 461; 3 Litt., 245; 3 Conn., 266; 1 Blackf., 296, 346; 7 Humph., 33; 8 Pet., 181. Moreover, the testator, in his book, entered all these bonds at their face; why should not he bequeath them in the same way? That they have not proved as valuable as he supposed they would, does not make his estate liable to make good the depreciation. In strictness it is believed that these legacies could be paid in any bonds or mortgages of which the testator died possessed, or, perhaps, any which the

executors chose to give. Willard's Eq., 502; 2 Fonbl. Eq., book 4, part 1, ch. 2, § 5, note (o); Forrest, 227; Ambler, 57; 1 Atk., 416. But the court has given the appellants the benefit of the equitable provision of the civil law. Domat by Strachan. We give heed to the rules of the civil law, founded on solid reason and good sense, where not contrary to adjudications of acknowledged authority in our own law. 1 Bouv. Dic., 277, § 10; 1 Story's Eq., § 23; 1 Kent's Com., §§ 515, 516; id., pp. 546, 547, note (f); 12 Mod., 482; 3 Black. Com., 436; 1 P. Wms., 12, 267; Cro. Eliz., 387; 2 Fonbl. Eq., b. 4, pt. 1, ch. 1, § 4; 3 Redf. on Wills, 8, note.

The brief of *Mr. Catlin*, for the residuary legatees, admitted that the legacies in question were general, and not specific, within the distinction established in 1 Roper on Leg. (3d ed.), 170; *Ashburner v. Macguire*, 2 L. C. in Eq., 229; and 3 Beav., 349; but denied that liability to ademption is a crucial test as to these two kinds of legacies. 2 Redfield on Wills, 462, citing *Jacques v. Chambers*, 2 Coll. C. C., 435. Counsel did not claim in this case, however, that any portion of the legacies had been adeemed; but denied that they were pecuniary and demonstrative; contending that two things are essential to a demonstrative legacy, viz., a *particular fund*, and proper words to indicate the intention of the testator to have a sum of money paid *out of*, or *from the proceeds of*, said fund. In support of these views counsel cited Wms. on Ex'rs, 995; *Kirby v. Potter*, 4 Ves., 750; *Balliet's Appeal*, 14 Pa. St., 451; *Tifft v. Porter*, 4 Seld., 518; *Pierrepont v. Edwards*, 25 N. Y., 128; *Smith v. Lampton*, 8 Dana, 69; and especially *Gilmer's Legatees v. Gilmer's Executors*, 42 Ala., 9, where the legacies were each of a specified number of dollars in confederate state bonds and in railroad bonds. The legacies here being thus found to be general legacies of certain classes of securities, counsel contended that the question whether they were to be satisfied by the payment of such securities to the *value* of the several amounts bequeathed, or by delivery of

securities to those amounts at their face value, is to be determined by the rule in relation to contracts, as intimated in the case last cited; and that the rule is settled in this state by the decision in *Noonan v. Ilsley*, 17 Wis., 314. See also a remark of PAINE, J., in *Starr v. Light*, 22 Wis., 433. In a suit upon a promissory note payable in certain railroad scrip, the market value of the scrip is the measure of damages. *Parks v. Marshall*, 10 Ind., 20. See also *Williams v. Jones*, 12 id., 561; *Pierce v. Spader*, 13 id., 458; *Williams v. Sims*, 22 Ala, 512; *Marr v. Prather*, 3 Met. (Ky.), 196; *Thorington v. Smith*, 8 Wall., 1; 1 Blackf., 296; dictum of Mr. Justice CLIFFORD in *Thompson v. Riggs*, 5 Wall., 663; Sedgw. on Dam., 240. A bond payable in gold and silver is not satisfied by payment in legal tenders. *Bronson v. Rodes* 7 Wall., 229; *Butler v. Horwitz*, id., 258. 2. The general rule is laid down in 2 Redfield on Wills, 136, N. 19, ch. 1, sec. 7, that the legatee, and not the executor, shall have the selection. But in the foot note is this material qualification: "But if the whole number is specifically bequeathed to different legatees in parcels, the selection must be made by the executor, or by a court of probate, or by appeal to a court of equity. *The rights of the legatees will be precisely equal.*" In the case at bar, a large amount of securities of the same class being bequeathed in parcels to numerous legatees, and their rights being precisely equal, it would hardly be practicable to allow them to choose, under the general rule; and a competent court of equity jurisdiction, duly appealed to, has decreed the manner of distribution. Counsel further cited on this point, Civil Code of La., art. 1633; Poth. Domat Test., ch. 5, sec. 3, art. 1; 2 Domat, b. 4, tit. 2; 2 Parsons on Con., 171; Co. Litt., 145 a ; *Smith v. Sanborn*, 11 Johns., 59; *McNitt v. Clark*, 7 id., 465; Poth. Traite des Obl., N. 246. 3. In regard to the devise of "four hundred acres of my land in Pierce or St. Croix county," it is well settled that a devise of so many acres of land without description is a specific devise;

*a fortiori*, a devise of so many acres of *my* land, describing the county. 4. Counsel further argued that a depreciation in the value of the securities, not foreseen by the testator, can have no influence in the construction of the will (*Roberts v. Pocock*, 4 Ves., 156; *Gilmer Will Case*, 42 Ala., 9); and that the intention of the testator in this case sufficiently appears from the form of the legacy to Herbert J. Loud, " one thousand dollars in railroad stock or other bond; *said bond* may be delivered to Dr. A. W. Hewett as trustee," the legatee being a minor. The phraseology is the same as in the legacies here in question; yet it is perfectly clear that the testator intended this legacy to be satisfied by the delivery of a one thousand dollar bond.

LYON, J. I. When this cause was called for argument, it was made to appear that the notice of appeal had only been served on the plaintiffs and the clerk of the proper court, and not upon the residuary legatees, and in behalf of the latter the hearing of the cause was objected to, because they had not been served with such notice. The objection was overruled, *ore tenus*, and the cause was argued at the bar by the counsel of the residuary legatees, with great learning and ability. It is now deemed proper to state briefly the grounds upon which such objection was overruled.

While an action brought by an executor to obtain construction of a will is not strictly an action of interpleader, yet it is ordinarily in the nature of an action in interpleader. 1 Redfield on Wills, 452 (ch. IX, § 36); 2 Story's Eq. Jur., § 824. This is so when the executor merely sets out in his complaint the will, or the doubtful clauses thereof, states the adverse claims of the parties interested, and asks the court to determine the true construction of the will. In such a case the executor neither alleges nor seeks to establish any particular construction of the will, but leaves the whole matter to be litigated by the parties interested (who stand upon the record as

defendants), and to be adjudicated by the court.   Such a complaint differs in no essential element from a bill of interpleader.   But for the fact that the legal interest of the executor in the personalty disposed of by the will, and which is the subject of the controversy, is something more than that of a mere stakeholder, such a complaint would be purely a complaint of interpleader.   2 Story's Eq. Jur., § 807.

The notice of appeal must be served *on the adverse party*. Laws of 1860, ch. 264, sec. 3 (Tay. Stats., 1632, § 3).   Previous to the adoption of the code, it was provided by statute in New York, that on an appeal from the order or decree of a vice chancellor, notice of the appeal should be served upon the solicitor of the *adverse party*.   2 R. S. (N. Y.), 178, § 60. In *Potter v. Baker*, 4 Paige, 290, it was intimated that on an appeal by a defendant to a bill of interpleader, another defendant, interested in the subject matter of the suit adversely to the appellant, was "the adverse party" within the meaning of the statute, and entitled to be served with a notice of appeal. In *Thompson v. Ellsworth*, 1 Barb. Ch., 624, it was held that, under a similar statute and rule of court, the party whose interest in relation to the subject matter of the appeal is in conflict with the reversal of the order or decree appealed from, or the modification sought for by the appeal, is "the adverse party."   The same construction was given to the section of the New York code of which our sec. 3, ch. 264, Laws of 1860, is a copy, in *Cotes v. Carroll*, 28 How. Pr., 436, and *Hiscock v. Phelps*, 2 Lans., 106,   The point decided in the latter case is thus stated in a head note: "Every party to an action, whether as plaintiff or defendant, who has an interest in sustaining a judgment or determination appealed from, is 'an adverse party' within sec. 327 of the code, and, as such, is entitled to notice of appeal."

But it should be observed that in every case in which the defendant appellant has been required to serve notice of appeal upon a codefendant adversely interested, the plaintiff had

no interest in the questions involved in the appeal, and did not, in any manner, represent such codefendant.  Such would be the position of the respective parties to a pure bill of interpleader, or one in the nature of interpleader, where the plaintiff, having no interest in the controversy, merely states in his bill the subject matter of the controversy, and the conflicting claims of the parties interested therein, and asks the court to require such parties to come in and litigate their rights to the end that the controversy may be judicially settled.

That the defendants, the residuary legatees in the present case, have an interest in sustaining the portion of the judgment appealed from, cannot be doubted.  Hence, were this only an action in the nature of an action of interpleader, there is much authority for holding that the residuary legatees should be served with notice of appeal.  But this is something more than such an action.  Instead of merely stating and asking the court to settle and determine the adverse claims under the will, the executors have constituted themselves the champions of the residuary legatees, and have asked the court to construe those clauses of the will in which the appellants have an interest, most favorably to such legatees.  The latter might have exhibited their cross bill against their codefendants, the appellants, or taken some equivalent proceeding tendering directly to the appellants an issue on the construction of those clauses of the will, to which the appellants might have interposed an answer or reply.  Had they taken this course, the residuary legatees would, probably, have been entitled to service of·the notice of appeal..  But they have not done so.  On the contrary, they have left the questions of construction in which the appellants are interested, to be litigated on the complaint of the executors and the answer of the appellants thereto.  They have thereby accepted the championship of the executors, and have constituted the latter their representatives in that behalf; and able counsel appeared for the executors in this court, and vigorously maintained the cause of the residu-

ary legatees against the appellants.    Under these circumstances, we are of the opinion that the executors, and not the residuary legatees, constitute "the adverse party" within the meaning of the statute of appeals, and that the latter are not entitled to be served with a notice of the appeal.

We have considered this question of practice, because it may become an important one in some future case.    But probably it is of small significance in the present case, for the reason that, had we taken a different view of it, the appellants would, doubtless, have been permitted to perfect their appeal by making the proper service on the residuary legatees.    Laws of 1860, ch. 264, sec. 17.

II. The construction given by the court to those clauses of the will by which land in Pierce or St. Croix county is devised to *Horace P. Hartshorn* and *Thomas C. Hartshorn,* two of the appellants, respectively, does not differ materially from the construction thereof claimed by the devisees.    It will be remembered that each of the devisees claimed that he was entitled to a conveyance of an undivided interest, equivalent to the quantity of land devised to him, in all of the lands in Pierce and St. Croix counties of which the testator died seized; and that the court adjudged that each was entitled to the fee simple of the specified quantity of such lands, in severalty, the same to be selected by the executors, and to be of average quality and value.    Had the court held that each devisee took an undivided interest under the will, as was claimed, and had the interest of each been set off to him, in severalty, by partition proceedings, the partition would have been made on precisely the same principles that the executors were directed to observe in selecting the lands which the devisees were to hold in severalty.    R. S., ch. 142, sec. 26.    Hence the judgment of the court in that behalf is equivalent to assigning to each devisee an undivided interest in the lands in question to the extent of the devise to him, and appointing the executors to make partition thereof.    Inasmuch as the court will compel

the executors to make a proper and just selection of the land, and will fully protect the devisees, we see no just cause for complaint against the judgment in that behalf. Indeed it was not seriously urged in the argument that the construction given by the circuit court to these devises should be disturbed.

III. It is claimed on behalf of the appellants, and freely conceded by counsel for the residuary legatees, that the legacies to the appellants are not specific but general legacies. The language of the will is, that three of these legacies are for the sums therein named, " in bonds or notes secured by mortgage," another " in bonds or notes and mortgaged security," and still another " in coupon railroad bonds." No specific bonds, notes, mortgages or coupon railroad bonds are named, in which payment may be made. Indeed, the executors are not restricted, in terms at least, to make such payment in the securities which the testator owned at the time of his death, or previously thereto, although the circuit court held that these legacies were payable in securities of the designated kinds which came to the hands of the executors. In the view which we take of the case, it is unnecessary to review this decision.

The court further held that payment of the legacies should be made at the nominal or face value of the securities, and not at their actual or market value. This ruling involves considerable sums of money, as well as an important legal principle, and we must determine whether it is correct.

In this case, as in all other cases of the construction of wills, the intention of the testator, as expressed in the will, must govern; and if the will itself does not clearly express that intention, the instrument may be read in the light of the surrounding circumstances. It may be conceded that it is not entirely clear from the language of the bequests, standing alone, whether the testator intended that the designated securities should be turned over to the appellants in payment of their legacies, at the nominal, or at the actual value thereof.

A bequest of a certain sum in notes, when the testator had several notes of various relative values, the face or nominal value of which exceeds the bequest, and their actual value falls short of it, may mean that the legatee is to have sufficient of such notes, estimated at their actual value, to pay the sum bequeathed; or it may mean that he is to take the same at their face. Probably neither construction would do violence to the language of the bequest. In such a case it would be necessary to consider the whole will, and such surrounding circumstances as would throw any light on the question, to ascertain the intention of the testator. And this we must do in the present case.

All of the legacies in controversy, amounting to twenty-five thousand dollars (except perhaps one thousand dollars), are to nephews and nieces of the testator. The testator left no children, or lineal descendants. He made ample provision in his will for his widow and two brothers, besides making them his residuary legatees. It does not appear that he left any other relatives surviving him nearer than nephews and nieces. He left legacies to quite a number of these, other than the appellants, but by far the largest legacies of this class are to the appellants. This fact shows, that, among his nephews and nieces, the appellants were the objects of his peculiar regard. Moreover, it was proved on the trial, on behalf of the executors and residuary legatees, that the testator believed, when he made his will, that his railroad bonds would always be at par, indeed, that they were more valuable securities than government bonds; and he sold a large amount of the latter and invested the proceeds in railroad bonds, paying nearly par therefor. From these facts it may fairly be argued than the testator intended that the appellants should receive the sums named in the legacies, in any event; and hence, that if the legacies should be paid in the designated securities, such securities should be reckoned at their actual or market values.

There is a very significant provision in the residuary clause

JANUARY TERM, 1876. 101

Wheeler and another, Ex'rs, vs. Hartshorn and others, imp.

of the will, which greatly strengthens the argument. It is this: "Any property or money standing charged on my books against any of the aforenamed legatees, from and after this date, my executors will deduct from sums bequeathed them by this will." Now suppose that *Horace P. Hartshorn* had received property of the testator of the value of eight thousand dollars, which stood charged to him on the books of the testator at the decease of the latter, and for which the said *Horace* had never paid. Of course the bequest to *Horace* would, under the above provision in the will, pay the debt in full; while *Thomas C. Hartshorn*, to whom a legacy was given of the same sum, in substantially the same words, but who was not so fortunate as to become indebted to the testator, might be compelled to receive the amount of his legacy in greatly depreciated securities at their face. So far as it appears, the relations of the two nephews to the testator were alike, and it is evident from the will that he intended to provide for them alike. It seems unreasonable to believe that he intended, in any contingency, to give such an advantage to the nephew who might happen to be his debtor at his decease. It seems more reasonable to say that when he spoke of "sums bequeathed," he intended sums of money or its equivalent.

It was proved on the trial, that about the time, but before he made his will, the testator told one of the executors that it would be very easy to comply with the requirements of the will; that all the executors would have to do would be to hand over the different securities to the different parties. It is claimed that this fact goes to prove that the testator intended the legacies should be paid in the designated securities at their face. It seems to us that the testator's remark to the executor evidenced an intention to make specific bequests of the securities, an intention which we have seen was not carried out. We are quite unable to perceive how any inference can justly be drawn from the premises, that the testator intended

his legatees should take the securities at their face, without regard to their actual value, in payment of their legacies.

*Noonan v. Ilsley*, 17 Wis., 314, is cited and relied upon to sustain the judgment of the circuit court. The instrument sued upon was a due bill for " three hundred dollars *in Watertown railroad stock*," and it was held that the contract would be fulfilled by delivering the stock of that company of the par or face value of three hundred dollars. A legacy in that form would be substantially a specific legacy. If the same rules of construction governed contracts and wills alike, the difference between that case and the one before us is measured by the difference between a specific and a general legacy. Had the due bill in that case been for three hundred dollars in railroad stock, generally, without naming the company; or, being as it was, had the testator in the present case directed in what specific notes or bonds each legacy should be paid, the cases would be more nearly alike. The remarks of Mr. Justice PAINE in *Starr v. Light*, 22 Wis., 433, so far as they are applicable to the question before us, evidently have reference to cases like that of *Noonan v. Ilsley, supra.*

After a patient examination of the authorities cited in the arguments of the respective counsel (a review of which in this opinion would serve no useful purpose), and after careful deliberation, we are impelled to the conclusion that the legacies to the appellants are not only general legacies, but demonstrative also, and hence, that if the securities designated in the will for that purpose are insufficient to pay them, the deficiency must be paid, with the other general legacies, out of the remaining estate of the testator. In the view we have taken of this case, it is quite immaterial whether the legacies be paid in the designated securities, that is, by turning over the securities to the legatees, or whether the same be sold by the executors and the proceeds applied in payment of the legacies.

It follows that those portions of the judgment appealed from, which construe the several bequests in the will to the

appellants, must be reversed, and the cause remanded with directions to the circuit court to render judgment in accordance with the foregoing opinion.

*By the Court.*—It is so ordered.