FRANK HISCOCK, Executor, etc., of JACOB M. COOK, deceased, Respondent, *v.* GEORGE W. PHELPS, Appellant, impleaded with CHARLES J. KENYON, and MARIA, his wife, PETER MUMFORD, and MARY, his wife, JNO. P. SHUMWAY, and HARRIET, his wife, and JNO. S. KENYON.

(GENERAL TERM, FIFTH DISTRICT, DECEMBER, 1869.)

Every party to an action, whether as plaintiff or defendant, who has an interest in sustaining a judgment or determination appealed from, is an "adverse party" within section 327 of the Code, and, as such, is entitled to notice of appeal.

The several members of a firm secured certain partnership debts and liabilities by two consecutive mortgages on real estate, which stood in their names, as tenants in common, and which had been purchased and was used by them for partnership purposes. Intermediate the making of these two mortgages one of the partners executed a mortgage on his interest in the same premises, to secure an individual indebtedness contracted partly for the purpose of raising money to make up his share of the partnership capital, and partly for other purposes. The firm, as such, became insolvent; the partner executing the individual mortgage had not contributed his full share to the firm capital, and was personally insolvent; the other members had contributed their full share, and were personally solvent. The holder of the two first mentioned mortgages commenced a foreclosure, claiming for the second of them a priority over the individual mortgage, although the latter was prior in time. The solvent partners answered, and also claimed that the two mortgages, executed by all the partners were entitled to be first satisfied, and that the individual mortgage was a lien on only one-fourth (the insolvent partner's interest) in the surplus. The insolvent did not appear, but the holder of the mortgage, made by him, claimed that his mortgage was a valid lien as of the time of its execution, and judgment having gone against him, after a trial, he appealed, but did not give notice of appeal to the partners who had answered, and in substantial accordance with whose answer judgment had been entered.—*Held*, that the partners answering had an interest adverse to the appellant in sustaining the judgment, and were necessary parties to the appeal; that in case the judgment should be reversed, the parties not before the court would not be bound by the reversal, and plaintiff's right might be prejudiced thereby, and he had, therefore, a right to take the objection; and that it was too late to make the other defendants parties, and the appeal should be dismissed.

Hiscock *a.* Phelps.

APPEAL on the part of George W. Phelps from a judgment entered on the report of a referee.

The action was brought to foreclose a mortgage upon the lands and premises described in the .complaint, executed to Jacob M. Cook, by the defendants, Charles G. Kenyon, Peter Mumford, John P. Shumway, and John S. Kenyon, bearing date the 11th day of May, 1866, described in the first count of the complaint. And also to foreclose a mortgage executed to Cook by the same defendants upon the same premises, and bearing date the 29th day of February, 1868, described in the second count.

George W. Phelps was made a defendant in the action, as holder of a mortgage, upon an undivided one-fourth of the said premises, to secure the sum of $3,500, executed to him by the defendant, John P. Shumway, and bearing date October 1, 1867; and the plaintiff claimed that the second mortgage to Cook should be declared an incumbrance on the whole of the said premises, in preference to the mortgage of Phelps, and that both of Cook's mortgages should be paid out of the avails of the mortgaged premises, in preference to the mortgage of Phelps.

Phelps appeared by his attorneys and answered separately; setting up his mortgage as valid and subsisting, and as a prior incumbrance to the second mortgage executed to Cook.

Charles G. Kenyon, Peter Mumford, and John S. Kenyon appeared by another attorney, and answered, and in their answer claimed, not only that the second mortgage executed to Cook should be preferred to the mortgage held by Phelps, but that Phelps' mortgage was equitably only a lien and incumbrance upon one-fourth part of any residue, which might remain after paying the mortgages executed to Cook, a mortgage on the same premises, executed by Peter Mumford, John P. Shumway and John S. Kenyon, to Charles G. Kenyon, and the liquidation of the partnership affairs of the said Charles G. Kenyon, Peter Mumford, John P. Shumway and John S. Kenyon. John P. Shumway did not appear.

The issues in the action were tried before a referee, and the

pleadings authorized the proofs which were given, and the facts found by him, and the proofs also supported the findings of fact which he reported.

He found that on or prior to the 11th day of May, 1866, the premises described in the several mortgages mentioned in the pleadings were owned by Jacob M. Cook and Charles G. Kenyon, and had been occupied by them as a distillery, Jacob M. Cook being seized in fee of the one equal undivided third part thereof and Charles G. Kenyon of the undivided two-thirds thereof.

The defendants, Charles G. Kenyon, John S. Kenyon, his son, John P. Shumway and Peter Mumford, prior to the 11th day of May, 1866, agreed by parol to purchase said real estate and put it into a paper mill manufactory, and run and occupy the same as copartners, under the name, style and firm of Charles G. Kenyon & Co., each to contribute $4,000, of which $10,000 was to be invested in the purchase of the real estate, and the balance to be used to improve the same and put in the necessary machinery for engaging in the business of manufacturing paper.

In order to carry out such agreement the copartners purchased out Jacob M. Cook's interest in said real estate for the sum of $3,333.33. Cook and his wife, on the 11th of May, 1866, executed to the said copartners a deed of his interest in the premises, in their individual names, as tenants in common, and they in their individual names, on the same day, and to secure to him the purchase price, executed to him their mortgage, to secure the said sum of $3,333.33, together with their bond for the payment of the same, which mortgage was acknowledged and duly recorded on the 11th day of January, 1867.

In order to carry out the said agreement Charles G. Kenyon, on the said 11th day of May, 1866, together with his wife, conveyed by warranty deed to John S. Kenyon, John P. Shumway and Peter Mumford an equal undivided half of the said premises for the price and consideration of $6,666.67, of which Charles G. Kenyon donated to his son, John S.

Kenyon, the sum of $4,000 and for his contribution of $4,000, to make up the capital sum of $61,000 which the parties agreed to contribute and invest in the copartnership business.

The balance of the consideration, $2,266.67, was secured to be paid to Charles G. Kenyon by the bond and mortgage of John S. Kenyon, John P. Shumway and Peter Mumford, which remained wholly due and unpaid, and a lien on the premises, and was acknowledged and duly recorded May 14, 1866.

The copartners immediately entered into the possession of the real estate as copartners, and improved the same by the expenditure of large sums of money for such purpose, and to put in the necessary machinery for manufacturing paper, and moneys were borrowed in the name of the firm for that purpose, and books kept in the name of the firm, showing the same, and the necessary expenditures for improvements, and the expense of procuring the necessary machinery, and the firm commenced to manufacture paper and sell the same as early as January, 1867.

In the course of the year 1867, the firm, in the firm name, borrowed money of Jacob M. Cook to improve said premises, and convert the same into a manufactory of paper, with an understanding that the same was to be secured by a mortgage upon the premises. The fact that money was borrowed of him, on account of the copartnership, appeared by the books kept in the office of the company, to which all parties had access, and must have come to the knowledge of all of the partners.

These loans from Cook to the company began as early as August 8th, 1867, and continued to November 5th, 1867, and on the latter day amounted, with interest, to the sum of $8,496.43.

Cook then agreed to loan them a further sum, upon the same understanding, and, on the 29th day of February, Charles G. Kenyon, John S. Kenyon, Peter Mumford and John P. Shumway executed their mortgage upon the whole of said premises to secure to him the payment of the sum of

$16,772.30, together with their bond executed to him accompanying the mortgage to secure the said sum, which mortgage was acknowledged and duly recorded on the 4th day of March, 1868; Cook having assumed, and taken up and paid, and assumed to pay the further sum of $8,496.43, then due from the said copartnership to the First National Bank of Baldwinsville, and for which the bank had held the paper of the firm, given for loans to raise money to be expended in improvements upon the premises, and which had been running a year or more, and renewed from time to time.

The copartners, in the course of the summer, fall and winter of 1867, and up to the time of giving the second mortgage to Cook, contributed to the purchase of the said real estate, improvements and machinery, &c., as follows: Peter Mumford, the sum of $4,400.37; John P. Shumway, the sum of $3,834.14; Charles G. Kenyon, in advances, $11,931.47, and in real estate, $2,500; and John S. Kenyon, by donation of his father's, in real estate, $4,000.

In addition to these sums the firm had borrowed the sum of about $16,000, which was applied to improve the premises and establish the paper manufactory thereon.

What the company had not borrowed of Jacob M. Cook at that time, they had before that time borrowed of the First National Bank of Baldwinsville, in anticipation of a loan from Cook, and which he offered and assumed to pay, and did pay at the time he took the second mortgage, and the true sum which the company owed him at the time of the execution of the mortgage is stated in the same.

It did not appear by the evidence, what were the true sums severally contributed by the several partners, which remained unpaid and unsatisfied, although it did appear that Charles G. Kenyon was largely in advance of the others, and that upon the dissolution of the firm, on the settlement of the copartnership debts, the company would owe him several thousand dollars, to be paid out of the partnership property, and effects before anything could be divided among the partners. It was also proved and found that the copartner-

Hiscock *v.* Phelps.

ship was insolvent, and that there was not property enough, including the real estate, to pay the copartnership debts, and that upon a settlement of the copartnership debts, nothing would remain to be distributed to the copartners.

It was also found that the mortgage of John P. Shumway to the defendant, George W. Phelps, was made and executed on the day it bears date (October 1st, 1867), to secure the individual debt of Shumway to Phelps, to the amount of $2,450, made up as follows:

June 1st, 1867, Phelps loaned to Shumway the sum of $1,000; April 1st, 1867, the sum of $450, and a prior indebtedness to Phelps and Mrs. Shumway of $1,000.

When he applied to Phelps for the first two loans, he informed him that he wanted the money to aid him in paying up his proportion of the moneys he had agreed to advance toward the purchase of the property in question and improvements thereon, and told him who were the members of the firm of Charles G. Kenyon & Co., and who owned the property.

On the first day of October, 1867, Shumway applied to Phelps for more money, and he declined to advance him more without security, and Shumway then proposed to give him a mortgage on his interest in the real estate, occupied at the time by the firm of Charles G. Kenyon & Co., for a paper manufactory, and known to Phelps to be in the actual occupation of said firm at the time. Phelps also required Shumway to secure by the same mortgage, what he owed his mother, a widow woman (the sister of Phelps), for provisions and money had of her by Shumway, including a small sum which he owed Phelps for provisions, &c., and the same was then agreed upon to amount to the sum of $1,000, as above stated (and was included in the $3,500); although no books were furnished, or accounts produced to show what was the true amount; but the same was arrived at by estimates, made at the time, and which are not shown to be incorrect in any material particulars.

Phelps then not having any more money to advance at the

time, proposed to take a mortgage for the sum of $3,500 to secure the aforesaid sums, amounting to about $2,500, and for any future advance which he might make not exceeding the face of said mortgage.

On the same day (the 1st day of October, 1867), Shumway with his wife executed the said mortgage, and acknowledged the same before Fred. A. Marvin, notary public; but the certificate of acknowledgment stated that the parties appeared before him and made said acknowledgment on the 1st day of October, 1866.

On the 30th day of December, 1867, the mortgage was delivered to the clerk of Onondaga county at his office, in Syracuse, for record, and was with him recorded that day in Book of Mortgages, No. 124, page 142.

Jacob M. Cook, when he received his mortgage, had no actual knowledge or information of the mortgage from Shumway to Phelps. It did not appear by the evidence what advances the several partners had made on the said 1st day of October, 1867; but it appeared that since then one-half of the debts against said Company, including advances by the parties, were incurred at that time by said copartnership for the improvement of the said premises and the purchase of machinery.

It was found that there was due upon the first mortgage, executed to Cook of principal, the sum of $3,333.33, with interest thereon to date of the report $745.16, making a total of $4,078.49. That there was due on the second mortgage executed to Cook of principal the sum of $16,772.30, with interest thereon to the date of the report $1,699.73; making of principal and interest the sum of $18,472.03.

That there was due on the mortgage executed by John S. Kenyon, John P. Shumway and Peter Mumford to Charles G. Kenyon of principal the sum of $2,666.67 and interest to date of report $596.26, making in all the sum of $3,262.93.

That there was due upon the mortgage executed by John P. Shumway and wife to George W. Phelps the principal

Hiscock *v.* Phelps.

sum of $2,450, together with interest thereon to date of the report.

The referee also found that the amount of the bond executed to Cook, accompanying his said second mortgage, could be collected of the mortgagors, who were solvent, except Shumway.

That the deed from Charles G. Kenyon to John S. Kenyon, John P. Shumway and Peter Mumford was to them in their individual names, and not in their copartnership name, for an undivided one-half of said premises.

That the defendant Phelps, at the time of taking his mortgage, had no personal knowledge that money had been borrowed of Cook by the firm of Charles G. Kenyon & Co., or that a mortgage was to be given him to secure the same. That at the date of the Phelps mortgage, October 1, 1867, Cook had only advanced to the firm as follows : August 8, 1867, $400; September 21, 1867, $700, against which there was a credit of thirty dollars.

That the $1,450 borrowed by Shumway of Phelps was for the purpose of, and was used by Shumway to pay toward his share of the $16,000 capital stock.

The referee reported that the mortgaged premises were so situated that they could not be sold in parts, and held that the plaintiff was entitled to a foreclosure and sale of the premises for the payment of his two mortgages, described in the first and second counts of his complaint.

That said premises were in equity to be treated and regarded as copartnership property.

That George W. Phelps was not a *bona fide* mortgagee, so as to give him priority of claim to the legal interest of John P. Shumway in the real estate, as against the plaintiff in this action, in respect to the mortgage described in the second count of his complaint, he having taken said mortgage against Shumway with notice that said premises had been purchased for copartnership purposes, and were improved and used by them for said purposes, and for the reason that said mortgage was given to secure *prior* indebtedness; and he further held and

decided that Cook, the mortgagee in the mortgage described in the second count of the plaintiff's complaint, having no actual notice of the mortgage from Shumway to Phelps when he took the same, was not affected by constructive notice of the mortgage to Phelps, by reason of the defective certificate of acknowledgment.

And he directed judgment declaring the mortgage des cribed in the second count of the plaintiff's complaint, a lien on the said premises prior to the lien of the mortgage from Shumway to Phelps, reserving the right of Phelps to establish his mortgage as a lien upon the surplus money if any should remain after payment of the plaintiff's two mortgages, and the said mortgage executed by John P. Shumway, John S. Kenyon and Peter Mumford to Charles G. Kenyon, and the costs and expenses of this suit, and the sheriff's fees, and expenses in foreclosure and sale of the mortgaged premises, reserving all questions as to claims upon such surplus. He directed the sale to be made in the usual manner, and after deducting expenses, &c., he directed the proceeds to be applied :

1st. To the payment of the first mortgage to Cook, described in the first count.

2d. To the payment of the said mortgage held by Charles G. Kenyon.

3d. The balance, if any, to the payment of the whole amount of the second mortgage executed to said Cook, described in the said second count of the complaint. And he ordered judgment also in case of deficiency, against the mortgagors, who are personally liable for the same, in the usual form.

Judgment was entered pursuant to the report.

The defendant, Phelps, appealed to the General Term "from that part of the decree and judgment, which decreed that plaintiff's mortgage described in the second count of his complaint have priority over defendant's mortgage mentioned in said complaint, and to the direction that it be first paid out of the proceeds of the sale of the mortgaged property ; and from all and every part of said decree and judgment,

affecting the defendant's right to have payment of his mortgage, out of the one-quarter proceeds of the mortgaged premises prior to plaintiff's said mortgage." And the notice of such appeal was served on the county clerk, and on the attorneys for the plaintiff, but was not served upon the attorney of either the said Charles G. Kenyon, Peter Mumford or John S. Kenyon.

*J. C. Hunt*, for the appellant.

*Frank Hiscock*, for the respondent.

Present—BACON, FOSTER, MULLIN and MORGAN, JJ.

By the Court—FOSTER, J. I have examined with some care, the questions arising on the merits on this appeal, and have come to the conclusion, that the report of the referee, and judgment entered thereon were correct.

I have no doubt upon the facts proved, that from the 11th day of May, 1866, when the deeds of Cook and of Charles G. Kenyon were executed to the parties composing the firm of Charles G. Kenyon & Co., for the purposes of, and to be used for the copartnership business, and to be paid for out of the joint fund, which the copartners were to contribute toward its capital, that in equity, the property conveyed became, and should be regarded and treated as copartnership property, and that erections and improvements made upon the said real estate, thereafter, for the use of the partnership, belonged to the copartners as such. And that all debts created by them for any of such purposes, would constitute an equitable claim and lien thereon, superior to any legal lien or incumbrance, which either of the copartners could place thereon in his own name, for his own individual debt.

The main question is, whether the mortgage of Cook for the $16,772.30, should have priority over the mortgage of the defendant, Phelps, executed on the first of the preceding October.

There is no dispute, but that Phelps knew, when he loaned the first money to Shumway, that the loan was to him individually, and to enable him to pay into the firm his share of its capital, or that the copartnership was existing, or that the copartnership were in the actual occupation of the premises as such, and were using it for their copartnership business.

Nor is there any doubt that nearly or quite all the amount included in that Cook mortgage was due from the firm to Cook and to the National Bank before the mortgage to Phelps was executed, and was then entitled to priority upon the whole partnership property as against the loan made by Phelps to Shumway, and therefore irrespective of the question whether the mortgage to Phelps was so acknowledged as to entitle it to be recorded and to constitute it notice to all others, I think Cook had a right, at the request of the copartners, to assume and pay such prior indebtedness to others, and succeed to all their equitable rights, as against the Phelps' claim, and that a mortgage taken by him as security therefor was entitled to priority over the mortgage of Phelps, even though it had been properly acknowledged and recorded.

If I thought the result of this appeal could be made to depend upon these questions, I should examine them much more elaborately than I have done, and should endeavor to analyze the authorities bearing on the questions; but we are met with the objection on the part of the plaintiff that this appeal is not properly brought by Phelps; that the proper and necessary parties for the determination of it have not been served with notice of the appeal and are not before us, and that we cannot determine the appeal, or at least we cannot reverse the judgment without making Charles G. Kenyon, Peter Mumford and John S. Kenyon parties to it, and the conclusions to which I have arrived on this question relieve me from such further examination of the merits of the case.

These three defendants appeared by their own separate attorney and put in their separate answer, and alleged the copartnership, the purchase of the real estate in question as

partnership property, the payment for it so far as it had been made, and for the improvement of it with copartnership funds; that for such payments the copartners had made unequal advancements; that C. G. Kenyon had advanced $12,000, John S. Kenyon $4,000, Peter Mumford $4,500, and John P. Shumway $3,800; that such advancements had been mainly before, and all of them without any knowledge of the Phelps mortgage, and made upon the faith and belief that the property was chargeable with the payment of partnership debts and the equalization of advances made by the several copartners before they could be charged with individual debts by mortgage or otherwise; that the mortgage to Phelps was received by him, with full knowledge of the facts, and that they had no knowledge of Phelps' mortgage, and they claimed that the said second mortgage of Cook should have priority over that of Phelps, and also that Phelps' mortgage should be adjudged only a lien on such interest, in the land or its proceeds, as Shumway would have after payment of both of Cook's mortgages, the mortgage to Charles G. Kenyon, the costs of the foreclosure suit, and the equalizing of the said advances.

Now, if the decree in this case is sustained, it is quite clear, provided the real estate is worth enough to pay the two Cook mortgages, and the mortgage to Charles G. Kenyon, that these three defendants will be absolved from all liability, on that part of the decree, which holds them liable on the bond for any deficiency, or they will remain liable only for such deficiency thereon, as may remain after exhausting the whole real estate toward their discharge; and, in case there is a surplus after paying the three mortgages to Cook and Kenyon, the question whether their equitable rights as copartners, to an equalization is, or is not, to be preferred to the claim of Phelps under his mortgage, remains open and to be determined in the ordinary way.

On the contrary, if upon the merits, we should decide that the Phelps mortgage has priority over the second mortgage of Cook, and if there should be a deficiency, arising from the

sale of the premises, in discharging the costs and paying the four mortgages, these defendants would be liable on their bond, under the decree, to a greater amount than they now are, equal to the whole amount found to be due on Phelps' mortgage; and even if the fund were sufficient to discharge all the mortgages, they would be foreclosed from setting up their equitable claims as copartners in preference to it. They are, indeed, the only persons who have a real pecuniary interest in sustaining this decree, for they are the only obligors who are responsible, and, being entirely able to pay, as the findings in the case show, it is not very important to the plaintiff that he succeed in obtaining the preference for his second mortgage; for all deficiency arising from the sale of the real estate, must be made up by these three defendants, provided the question be so determined, as not to discharge their personal liability.

The Code (section 327) provides that: "An appeal must be made by the service of a notice in writing on the adverse party, and on the clerk with whom the judgment, or order, appealed from is entered; stating the appeal from the same, or some specified part thereof."

This does not mean that a defendant appealing shall give notice only to the plaintiff or plaintiffs; or that a plaintiff appealing, shall give notice only to the defendant or defendants; but its intendment and requirement is, that the notice shall be served on all parties whose interests are adverse to the party appealing.

The rule of the former Court of Chancery required that a notice of the appeal should be served on the solicitor of the "adverse party," and under this it was held that the notice must be served on the solicitors of the several parties whose interests as to such appeal are adverse to the appellant. (1 Barbour's Chancery Practice, 400.) In *Potter* v. *Baker* (4 Paige, 290), it was held that, upon an appeal from a vice-chancellor to the chancellor, the appellant must, within the time for appealing, serve a notice of the

Hiscock *v.* Phelps.

appeal upon the solicitors of the several parties whose inte-
rests as to such appeal are adverse to that of the appellant.

And in *Thompson* v. *Ellsworth* (1 Barbour's Chancery Rep.,
624), where the question was as to what parties the appellant
was to execute a bond or bonds on his appeal, the chancellor,
at page 627, said : " The adverse party, within the intent and
meaning of the eightieth section, and of the (then) 116th rule
of this court, means the party whose interest in relation to
the subject of the appeal is in conflict with the reversal of the
order or decree appealed from, or the modification sought for
by the appeal." He further decided that where two or more
of the parties have a common interest in resisting the reversal
of the decree, a joint bond as to them was sufficient; but
where there are respondents having distinct and conflicting
interests in relation to the object sought for by the appeal,
that separate bonds should be given to render the appeal
effectual.

So, under the Code, in an action brought by executors for
the construction of a will of the testator, where several heirs
and devisees claiming under the will are made defendants,
and a decree or judgment of the court is pronounced, allow-
ing the claims of some of the defendants as against the others,
it was held that the latter defendants on bringing an appeal
from the judgment, in order to effect their appeal, must not
only serve their notice of appeal and other papers upon the
plaintiffs, but also upon the *defendants who have established
their claims* under the will, as these defendants are the
*adverse party* within the meaning of the Code. (*Cotes* v.
*Carrol*, 28 Howard's Pr. Rep., 436.)

That case is in precise analogy with the one before us, and,
to the extent above stated, the court was unanimous in its
decision. A majority of that court held that it was too late
to perfect the appeal by serving notice upon the defendants
not already made parties to it, and struck the cause from the
calendar as to them, and refused to hear the appeal as to any
of the matters affecting their interests.

. The other justice of that court dissented from the latter part

of the decision, and held the appeal having been brought and notice given *in good faith* that the appellants under the second subdivision of section 327 of the Code ought to be allowed to serve notice of the appeal and copy of the case and exceptions on those other defendants, &c., and thus perfect their appeal.

I have said that Charles G. Kenyon, John S. Kenyon and Peter Mumford are the persons most interested in upholding the decree made in this action; but the plaintiff is more than nominally interested, because if a new trial should be granted and the judgment should be set aside, as against all the parties, he is interested to the whole amount of the mortgage of Phelps, because before the suit should be finally terminated the three defendants might not be able to respond for any deficiency; and he is interested in requiring that a decision should not be made against him unless it shall at the same time be effectual also against him.

I have no doubt, therefore, that we cannot decide this appeal in favor of the defendant while the three defendants who appeared in the action are not parties to it, and I have very little doubt that it is too late now to make them parties, and I think the appeal should be dismissed with costs.

All concur and judgment of dismissal ordered.