[Decided April 27, 1893.]

## THE VICTORIAN.

### SMITH *v.* OREGON SHORT LINE RY. CO.

[S. C. 32 Pac. Rep. 1040.]

1. PARTIES TO AN APPEAL — JURISDICTION — CODE, § 537.—Every party is "an adverse party," within the meaning of section 537, Hill's Code, whose interests in relation to the judgment or decree appealed from are in conflict with the modification or reversal sought by the appeal: *Lillienthal* v. *Caravita*, 15 Or. 341, cited and approved.

2. IDEM.— In an action to enforce a lien against a vessel, where the claimant files a bond with sureties to obtain its release, and judgment is rendered against both the claimant and the sureties, the claimant need not serve notice of its appeal on the sureties, since their interests are identical with those of the claimant.

3. CONSTITUTIONAL LAW — JURISDICTION OF STATE COURTS TO ENFORCE A LIEN FOR BUILDING VESSELS — CODE, § 3690.— Under section 9 of the Judiciary Act of 1789, the district courts of the United States have exclusive jurisdiction of all maritime causes of action, but a contract for furnishing materials in constructing a domestic vessel is not a maritime contract: therefore, section 3690, Hill's Code, is constitutional and valid in so far as it gives the state courts jurisdiction to enforce by a proceeding *in rem* the lien given by the state law for materials used in constructing domestic vessels, nor is it of any consequence that all or part of the materials were furnished after the vessel was launched.

4. STATUTE OF LIMITATIONS — BOAT LIENS — ACCOUNTS — CODE, § 3706.— Where materials are furnished from time to time as they are needed in

| | |
|---|---|
| 24 | 121 |
| 24 | 181 |
| 32*1040 | |
| 33* | 402 |
| 24 | 121 |
| 26 | 196 |
| 32*1040 | |
| 41*1103 | |
| 24 | 121 |
| 28 | 117 |
| 28 | 304 |
| 28 | 305 |
| 28 | 344 |
| 24 | 121 |
| 130 | 295 |
| 24 | 121 |
| 32 | 335 |
| 24 | 121 |
| 34 | 343 |
| 24 | 121 |
| 36 | 404 |
| 24 | 121 |
| 37 | 235 |
| 24 | 121 |
| 48 | 526 |

the construction of a vessel, and several payments are made on account, all the items constitute one continuous account, and the limitation of one year provided by section 3706, Hill's Code, for enforcing a lien for such materials, does not begin to run against each item as it was furnished, but begins from the date of the last item.

5. FRIVOLOUS PLEADING.— The test of frivolousness in pleading is whether or not it introvertibly so appears from the mere reading of it; if so, then it is frivolous, but if argument is required to show that the pleading is bad, it is not frivolous.*

6. MOTION TO STRIKE OUT — DEMURRER.— The proper way to test the sufficiency of a pleading is by a demurrer and not by a motion to strike out.

7. BOAT LIEN — PAYMENT TO CONTRACTOR.— Under statutes like section 3690, Hill's Code, providing that every vessel built in the state shall be liable to a lien for all debts due to persons on account of material used in the construction of the same, the right to a lien is determined solely by the furnishing of the material — and this is in no wise affected by the terms of the contract between the owner and contractor, or by the fact that the contractor may have been fully paid.

## Multnomah County: E. D. SHATTUCK, Judge.

Action by W. K. Smith, A. I. Smith, W. V. Smith, and P. C. Smith, doing business under the firm name of Smith Bros. & Co., against the boat Victorian, the Oregon Short Line & Utah Northern Railway Company, claimant, to enforce a material man's lien. From a judgment for plaintiffs, claimant appeals. AFFIRMED.

*William W. Cotton* and *Zera Snow*, for Appellant.

Sections 3692 to 3706 of the boat lien law relating to the remedy are unconstitutional and void, being in contravention of the provisions of the United States statutes conferring upon the admiralty courts of the United States exclusive jurisdiction of proceedings *in rem* to enforce liens arising out of torts or contracts falling within the jurisdiction of admiralty. By the ninth section of the judicial act of 1789, now found in paragraph 8 of section

*Section 75. Sham, frivolous, and irrelevant answers and defences may be stricken out on motion. Section 85. If irrelevant or redundant matter be inserted in a pleading, it may be stricken out on motion of the adverse party.

563 of the revised statutes of the United States, the district courts of the United States have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of the common-law remedy where the common law is competent to give it. As a proceeding *in rem* is not a common-law remedy, the United States supreme court has repeatedly held that state courts have no jurisdiction of any proceedings *in rem* against a vessel arising upon any cause of action which falls within the jurisdiction of the admiralty courts; and that in all such cases, the original jurisdiction of the United States district court of such proceedings *in rem* was exclusive: *The Moses Taylor*, 4 Wallace, 411; *The Hine* v. *Trevor*, 4 Wallace, 555; *The Belfast*, 7 Wallace, 625.

The subjects of admiralty jurisdiction are maritime contracts and maritime torts: *The Belfast*, 7 Wallace, 637. *Ins. Co.* v. *Dunham*, 11 Wallace, 1. Contracts for repairs, supplies and materials furnished to a vessel, are all maritime contracts, and all such contracts, except when performed in the home port of the vessel, give rise to a maritime lien even in the absence of statute: *The Virgin*, 8 Peters, 538; *The Hiram Dixon*, 33 Fed. Rep. 297; *The Georgia*, 32 Fed. Rep. 637; *Clyde* v. *Steam Transportation Co.* 36 Fed. Rep. 501. A contract performed wholly upon land for work done or material or labor furnished in the building of structure upon the land, is not a maritime contract.

The court erred in receiving evidence against the objections of the defendant in regard to the furnishing of lumber and building material to Steffen more than a year prior to the commencement of the action; and erred in entering up judgment against the defendant for the value of such lumber and building material found by the referee to have been furnished to Steffen and used in the construction of the boat more than a year prior to the commencement of the action. One of the limitations upon the

plaintiffs' lien and the action for its enforcement is that
found in section 3706, Hill's Code, reading as follows:
" All actions against a boat or vessel under the provisions
of this title shall be commenced within one year after the
cause of action accrued." A provision of this kind in a
statute creating a new right or a new remedy is not a limi-
tation simply upon the remedy which would be recog-
nized, only* when it is the law of the forum, but is a
limitation upon a right and will be recognized in all
forums, and is not waived if not pleaded, is not subject to
the exemptions that effect the general statutes of limita-
tion, and no disability can toll it: Buswell, Limitations,
§ 531; Jones, Liens, § 1732; *The City of Salem* (Dist. Or.)
31 Fed. 616.

*Earl C. Bronaugh* and *Wm. D. Fenton* ( *Lewis L. McAr-
thur* and *Earl C. Bronaugh, Jr.,* on the brief), for Re-
spondents.

The contract sued on is not a maritime contract, and
is therefore not enforceable in the federal courts. See the
following in addition to the cases cited by the court: *Mott*
v. *Lansing,* 57 N. Y. 115; *The Lottawana,* 21 Wall. 558;
*The Tug Montauk* v. *Walker,* 47 Ill. 337; *Ferry Co.* v. *Beers,*
20 How. 400; *The Scow M. Tuttle* v. *Buck,* 23 Ohio St. 566.

Admiralty does not have jurisdiction unless the libel-
lant has a lien under a maritime contract, or a local law,
and a mere lien under a local law will not confer jurisdic-
tion. The contract must also be maritime: *The Pacific,*
9 Fed. Rep. 120; *Sheppard* v. *Steele,* 43 N. Y. 52, 56; *Brook-
man* v. *Hammell,* 43 N. Y. 554; *Keating* v. *Spink,* 62 Am.
Dec. 214, note 238; *Walters* v. *The Steamboat Mollie Dosier,*
95 Am. Dec. 722, note 737; *Boylan* v. *Steamboat Victory,* 40
Mo. 252, 236; *Mitchell* v. *The Steamboat Magnolia,* 45 Mo.
67; *Burke Mfg. Co.* v. *Steamboat,* 42 Mo. Ap. 93; *The Man-
hattan,* 46 Fed. Rep. 707.

While this account is not an open, mutual and current

account, in the strict sense of that term, because there are
no demands in favor of Steffen, but merely payments made,
yet it is certainly a running account, and the statute of
limitations as between plaintiffs and Steffen would not
begin to run until the date of the last item, and the claim
would not be barred until six years from that date.  As
between the plaintiffs and the boat, the statute would not
begin to run until the date of the last item, and would not
be barred until more than one year had elapsed after such
date, or after the completion or launching of the vessel:
*Chamberlain* v. *Cuyler*, 9 Wend. 127; *Skyrme* v. *Occidental
Mining Co.* 8 Nev. 237; *Singerly* v. *Doer*, 62 Pa. St. 12;
*Fitch* v. *Baker*, 23 Conn. 567; *Mathews* v. *Brewing Co.* 19 S.
W. Rep. 150.

The account in this case was a running account and
constituted but one entire demand; the cause of action
therefore accrued at the date of the last item: *Stine* v.
*Austin*, 9 Mo. 259; *Steamboat Mary Blane* v. *Beehler*, 12 Mo.
477; *Carson* v. *Steamboat Daniel Hillman*, 16 Mo. 257; *Boy-
lan* v. *Steamboat Victory*, 40 Mo. 251; *Fulton Iron Works* v.
*Smelting Co.* 80 Mo. 269; *Mellor* v. *Valentine*, 3 Col. 258;
*Jones* v. *Swan*, 21 Iowa, 185; *Lamb* v. *Hanneman*, 40 Iowa,
43; *Iowa Mfy. Co.* v. *Shanquest*, 70 Iowa, 124 (29 N. W.
Rep. 820); *Smith* v. *Velie*, 60 N. Y. 111; *Bartel* v. *Mathias*,
19 Or. 487.  Each item in the account is not to be regarded
as a separate cause of action, but rather the whole as a con-
tinuous dealing, the aggregate of the items being included
in the same cause of action for which one lien is given:
2 Jones, Liens, §§ 1433, 1431.

It appears from the complaint that the account here
sued on is a running account, and that this is so fairly
inferable from the conduct of the parties at the time the
contract was made, and from the subject matter of the con-
tract.  If from such conduct and subject matter it appears
that the whole account was to be regarded as one trans-
action, the lien would relate to and take effect from the

date of the last item so as to support the lien for the entire account: *Central Trust Co.* v. *Texas & St. Louis Railway Co.* 23 Fed. Rep. 673; *Ring* v. *Jamison,* 66 Mo. 428; *St. Paul, etc.* v. *Stout,* 47 N. W. Rep. 974 (Minn.); *Chester Rolling Mills, etc.* 6 N. Y. Sup. 215.

The fact that the contractor, Steffen, may have been paid in full is no defense against the lien of plaintiffs, but the answer does not aver payment in full. The owner must see at his peril that all the material men, sub-contractors and laborers are paid in full, and the amount due upon the contract is not the limit of their recovery: *Spokane Mfg. Co.* v. *McChesney,* 21 Pac. Rep. 198; S. C. 1 Wash. St. 609; *Henry & Coatsworth Co.* v. *Evans,* 10 S. W. Rep. 868; S. C. 97 Mo. 47; *Atwood* v. *Williams,* 40 Me. 411; *Ainslie* v. *Kohn,* 16 Or. 371; *Allen* v. *Rowe,* 19 Or. 19; *City of Salem,* 7 Sawyer, 481; *Albright* v. *Smith,* 51 N. W. Rep. 590 (S. D.); *Bardwell* v. *Mann,* 48 N. W. Rep. 1120 (Minn.); *Laird* v. *Moonan,* 32 Minn. 358.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

1. This is an action brought against the defendant boat Victorian, under the provisions of the boat lien law (sections 3690 *et seq.*), to enforce a lien for materials alleged to have been furnished by the plaintiffs to one J. F. Steffen, and to have been used by him as a contractor in the construction of the defendant boat. The record discloses that the sheriff of Multnomah County seized the boat, whereupon the Oregon Short Line Ry. Co., as defendant and claimant, filed its undertaking as provided by section 3698 of Hill's Code, with D. P. Thompson and J. W. Troupe as sureties, and obtained its release and thereafter appeared in the action as such defendant and claimant. After trial the court rendered a judgment against the boat Victorian, and, also, under section 3701 of Hill's Code, against the defendant company and its sureties in the undertaking.

From this judgment the defendant company has appealed, but neither D. P. Thompson nor J. W. Troupe has joined in the appeal, nor has it served notice of such appeal upon them, or either of them. Upon this state of the case, plaintiffs have moved to dismiss the appeal, upon the ground that Thompson and Troupe are so connected in the judgment, and would be so affected by its modification or reversal, that they are as to the plaintiffs or defendants an "adverse party," within the meaning of the statute in relation to appeals, and, therefore, necessary parties to give the appellate court jurisdiction to revise or reverse it. Our Code provides that "any party to a judgment or decree * * * may appeal," and that "the party appealing is known as the appellant, and the adverse party as the respondent": Section 536. "Any party" evidently refers to any person who is a party to the action. To take an appeal it is required that "the appellant shall cause a notice to be served on the adverse party, and file the original with proof of service indorsed thereon, with the clerk": Section 537. Who, then, is "an adverse party," within the meaning of those provisions of the Code, upon whom the notice of appeal must be served? Evidently every party whose interest in relation to the judgment or decree appealed from is in conflict with the modification or reversal sought by the appeal. Such has been declared to be the meaning of the words "adverse party" as used in the statutes of other states: *Thompson* v. *Elsworth,* 1 Barb. Ch. 627; *Cotes* v. *Carroll,* 28 How. Pr. 436; *Hiscock* v. *Phelps,* 2 Lans. 106; *Wheeler* v. *Hartshorn,* 40 Wis. 96; *Senter* v. *De Bernal,* 38 Cal. 640; *Lillienthal* v. *Caravita,* 15 Or. 341 (15 Pac. Rep. 280).

2. The notice must be served on all parties whose interests are adverse to the party appealing. The question, then, is whether Thompson and Troupe, who have not appealed from the judgment, are to be deemed adverse parties so as to require them to be served with notice of

the appeal. They certainly have no interests in the case which are adverse to, or in conflict with, those of the appellant. The judgment is against them and the appellant, as well as the boat, for a specific sum of money. Its modification or reversal would affect them precisely as it would affect the appellant, indicating that its and their interests are identical, and not adverse. The party interested in sustaining the judgment or decree is an adverse party to the appellant, and, as such, is entitled to notice of the appeal. Thompson and Troupe are not interested in sustaining, but in defeating, the judgment, and are not parties whose interests are in conflict with, or adverse to the party appealing. "Our Code," says SANDERSON, J., "allows any and every party who is aggrieved to appeal without joining any one else, no matter what may be the character of the judgment against him, whether joint or several, and, in this respect, works a change from the former practice; but he is required to notify all other parties who are interested in opposing the relief which he seeks by his appeal, if they have formally appeared in the action in the court below, or his appeal, as to those not served, will prove ineffectual, and also as to those served, if the relief sought is of such a character that it cannot be granted as to the latter without being granted as to the former, also": *Senter* v. *De Bernal*, 38 Cal. 642. Thompson and Troupe are not parties "who are interested in opposing the relief which the appellant seeks by his appeal," and, therefore, it is not required to notify them. When, of parties who are interested in opposing the relief sought by the appeal, some are, and others are not, served, the appeal will prove ineffectual when the relief sought is of such character that it cannot be granted to those served without being granted as to those not served. As Thompson and Troupe were not interested in sustaining the judgment from which the appeal is brought, they are not "an adverse party" within the meaning of the statute, and consequently are not entitled to notice of appeal.

3. The next objection involves the right of the court to enforce the lien by a proceeding *in rem*. It is founded upon the assumption that the lien sought to be enforced arose out of a maritime contract, and constituted, therefore, a maritime cause of action. By the ninth section of the judiciary act of 1789 the districts courts of the United States are invested with the exclusive jurisdiction of all maritime causes of action, saving to suitors in all cases the right of the common-law remedy where the common law is competent to give it. The contention is that the common-law remedy thus saved to suitors does not extend to the enforcement of liens by a proceeding *in rem*, and, consequently, that a cause of action arising out of a maritime contract belongs exclusively to the admiralty jurisdiction. The action was brought under section 3690, to enforce a lien on the boat Victorian for materials alleged to have been furnished to and used by the contractor in the construction of such boat. The findings show that the boat was launched before it was completed, and some of such materials were furnished and used after it was launched, but before it was completed. When the action was commenced the boat had not been enrolled or licensed, though application had been made to the proper authorities to have it enrolled and licensed under the name "Victorian." The lien given under our subdivision 2 of section 3690 is almost identical with that given under section 14 of the Massachusetts statute, and under either statute such lien may be enforced by a proceeding *in rem*. In *Atlantic Works* v. *The Glide*, 157 Mass. 525 (33 N. E. Rep. 163), the jurisdiction of the courts of a state to enforce liens by a proceeding *in rem* for labor and materials furnished in repairing domestic vessels was thoroughly examined and upheld. As the court was divided, the case is especially valuable in presenting the authorities and the reasons for and against the exercise of such jurisdiction by state courts. But we are not concerned with the validity of the juris-

XXIV OR.—9.

diction where it is exercised to enforce a lien for labor or materials furnished in repairing domestic vessels. As FIELD, J., said: "We do not find it necessary to determine whether, under the existing decisions of the Supreme Court of the United States, and the existing admiralty rules, this court has jurisdiction to enforce a lien created by the statutes of the state for materials used or labor performed in repairing a domestic vessel": *McDonald* v. *The Nimbus*, 137 Mass. 363. It may be conceded that the weight of judicial authority is opposed to the exercise of such jurisdiction by the state courts in cases of that kind, without affecting the validity of its exercise in cases of this kind, unless the provisions in relation to them, contained in the statute, are so inseparably connected that one cannot stand without the other. But this is not so. The lien given for materials furnished or labor done in repairing vessels is distinct and separate from that given for the building or construction of vessels, and a denial of the power of the court to enforce a lien in the first case in no way involves or affects the power of the court to enforce the lien in the latter.

In *Sheppard* v. *Steele*, 43 N. Y. 56 (3 Am. Rep. 660), the lien and its enforcement in the state courts for materials furnished in the construction of a boat was upheld notwithstanding previously in *The Josephine*, 39 N. Y. 19, the enforcement of a lien for supplies furnished a domestic vessel at her home port was denied, and the same statute in that regard declared to be void, upon the ground that these different matters, although contained in the same statute, were not so blended, or one so dependent on the other, as to render the whole statute inoperative or void. Nor will we assume that a statute is void in part in order to defeat a right involved under another part. We regard the act and its amendment as one statute. We test the right claimed under it by viewing the statute as a whole. We construe them together as one statute. That a statute

which gives a lien upon vessels and furnishes a means of
enforcing it, in cases of contracts not maritime, is valid, is
not now open to question; and that contracts for the build-
ing of vessels or ships, or for labor performed or materials
furnished in their construction, are not maritime contracts,
and not cognizable in admiralty, is affirmed by the whole
current of judicial authority, both federal and state.   In
*Roach* v. *Chapman*, 22 How. 129, the suit was brought to
enforce a claim for a part of the price of machinery fur-
nished in the construction of a steamboat, and it was held
that the contract out of which the claim arose was not
maritime.   Mr. Justice GREER, in delivering the unani-
mous opinion of the court, said:   "A contract for building
a ship, or supplying engines, timber, or other material for
her construction is clearly not a maritime contract.   Any
former dicta or decisions which seem to favor a contrary
doctrine were overruled by this court in *People's Ferry* v.
*Beers*, 20 How. 393":   *The Belfast*, 7 Wall. 624; *Edwards*
v. *Elliott*, 21 Wall. 553; *The Orpheus*, 2 Cliff. 29; *The Nor-
way*, 3 Ben. 165; *Smith* v. *The Royal George*, 1 Woods, 293.
In *The Busteed*, 100 Mass. 409, under a statute like our
own, FOSTER, J., said:   "The statutes of this common-
wealth giving a lien on a ship or vessel for labor per-
formed and materials furnished in its construction, are
regarded by this court as constitutional and valid enact-
ments, and have been recognized to be so in numerous
decisions":   *Stinton* v. *The Roberts*, 34 Ind. 448 (7 Am.
Rep. 229); *Sheppard* v. *Steele*, 43 N. Y. 52 (3 Am. Rep.
660); *Thorsen* v. *The Martin*, 26 Wis. 488 (7 Am. Rep. 91);
*Scull* v. *Shakspear*, 75 Pa. St. 297; *Edwards* v. *Elliott*, 34 N.
J. L. 96.   So that we reach the question which we are
required to decide, holding, at least, that the statute is
valid and operative in so far as it gives a lien for labor per-
formed or materials furnished in the construction of ships
or vessels, and provides for its enforcement by a proceed-
ing *in rem.*

The inquiry, then, is whether, upon the facts, the contract is maritime. If it is, the cause of action arising out of it falls within the exclusive jurisdiction of the admiralty courts; on the other hand, if the contract out of which the cause of action arose is not a maritime contract, the cause is one of which the admiralty courts have no jurisdiction. The fact that some of the materials were furnished after the boat was launched and afloat is the only circumstance that can be relied upon to class the contract as maritime. This is upon the hypothesis that the materials furnished after a boat or vessel is afloat, though for its completion, make the contract maritime, and consequently, that the contract is not to be performed on land. It is true that contracts relating to commerce and navigation are classed as maritime contracts; but the simple fact that an incomplete or unfinished vessel has been launched into the water when a contract relating to her completion is made, in no way fixes or determines its character. In such case the work performed or the material furnished is in constructing the boat or vessel, and to bring her into existence as a complete entity. There is a marked difference between furnishing materials to a vessel already in existence, and furnishing them to bring one into existence. The latter are for her construction, and the contract is not maritime. The idea is that the vessel, when completed, will be used for maritime purposes, but until then she is in the process of construction,—a structure under state control,—and a claim for materials furnished, though she may be afloat, is not a maritime, but a land contract. The fact, therefore, that the work was done, or the material furnished, after the vessel was launched, does not *per se*, as the cases show, render the contract maritime. In *Wilson* v. *Lawrence*, 82 N. Y. 411, the vessel was launched before it was completed, and thereafter the plaintiff contracted to furnish her with sails, as a part of and to complete the work of construction. The question was whether

the furnishing of sails after launching was a land contract
or one purely maritime. The court held that it was a
land contract, and that the lien attached. FINCH, J., said:
"It is doubtless true that, before launching, the contracts
for construction are more easily and strongly shown to be
land contracts, but no case holds that the work of build-
ing or constructing a vessel cannot proceed after the
launch. Indeed no case could hold that, for it is purely a
question of fact. A vessel may be unfinished when
launched, and the work of building may continue while
she is in the water.    *    *    *    In *Roach* v. *Chapman*, 22
How. 129, the court held that 'a contract for building a
ship, or supplying engines, timber, or other material for
her construction is clearly not a maritime contract.' If
an engine is an essential part of the construction of a ves-
sel propelled by steam, why are not the sails an essential
part of the construction of a sailing vessel? Is the ship
without these necessary aids any more built or constructed
in the one case than the other?    *    *    *    We are satis-
fied that the contract in this case was a land contract and
that the lien attached." In *McDonald* v. *The Nimbus*, 137
Mass. 360, FIELD, J., said: "The facts show that the
materials furnished in this case were furnished in the
construction of the vessel. She was not so far constructed
as to be fitted for sea and used as a commercial vessel
after her arrival in Gloucester": *Baizley* v. *The Odorilla*,
121 Pa. St. 233 (1 L. R. A. 505; 15 Atl. Rep. 521).

In the case of *The Iosco*, Brown's Adm. 495, a hull
completed at the place of launching received a small cargo
of flour as ballast, was towed with her spars on deck to
another port, where her masts were stepped and the vessel
put in condition for navigation, and it was held that the
work was done in the building of a vessel, and that ad-
miralty had no jurisdiction. Mr. Justice LONGYEAR said:
"What libellants did and furnished were clearly by way
of completing the construction of the vessel, and consti-

tuted in no sense, within the meaning of the maritime law, repairs and materials, for which by that law an action *in rem* will lie. It makes no difference that the vessel was in the water. It is always the case that a portion of the construction of a vessel is done after she has been put in the water. Neither is there anything in the position of libellants' advocate that the schooner had to all intents and purposes assumed the position and liabilities of a vessel, by taking in and transporting freight on her trip from Alabaster to Bay City, and that therefore what was done and furnished to and for her at the latter place by libellants, must be deemed as repairs, etc. The undisputed testimony is that the flour, etc., were taken as ballast. But even if this were otherwise, the position could not be maintained, because it clearly appears that the vessel was not so far completed at the time as to enable her to discharge the functions for which she was intended, and that the sole purpose of the trip was to avail her owners of the greater facilities of Bay City to complete her construction, and that the taking on of the flour, etc., was a barely incidental matter." In *The Count De Lesseps*, 17 Fed. Rep. 461, the claim was for materials, consisting of a derrick, buckets, and other dredging machinery furnished at Philadelphia after the vessel had been towed from New Jersey where she had been built, to fit out the vessel for an intended voyage to Panama, and it was held that they were furnished in the original construction of the boat: *The Pacific*, 9 Fed. Rep. 124; *Collis* v. *Coernine*, 7 Am. Law, Reg. 5; *Smith* v. *The Royal George*, 1 Woods, 293; *The Norway*, 3 Ben. 163. These cases show that a claim for work done, or materials furnished, in the building or original construction of a vessel is not a maritime contract, and that admiralty has no jurisdiction. The claims are not maritime when they are for original construction or equipment, whether or not the boat has been launched. It is the usual mode in the building of steamers, to build the

hull, and to place the engines, boilers, and machinery in it after the launching, so as to avoid the additional weight of the machinery in the process of launching. When the work done, or the material furnished, is used in the construction of the vessel, and to bring her into existence as an entity, the claim does not arise out of a maritime contract, and it is competent for the state courts to enforce it by a proceeding *in rem.*

4.   The next objection involves the statute of limitations. Section 3706 provides that "All actions against a boat or vessel under the provisions of this title shall be commenced within one year after the cause of action accrued." The record discloses that the defendant reserved exceptions to all evidence relating to materials furnished and used in the vessel more than a year prior to the commencement of the action. The contention is, as to such items, that the cause of action accrued more than one year prior to its commencement, and, therefore, within section 3706, the plaintiff had no lien as to such items, or a cause of action upon them. The facts show that the plaintiff furnished the material from time to time as it was needed for use in the construction of the boat, and that there were several payments made on the account during the interim. The mode of dealing between the parties indicates a running account during the process of the building of the boat. Each item was added to the account at intervals, according as it was ordered and furnished, and the aggregate of items, so furnished, constitutes the claim, less the credits, for the materials furnished in the construction of the boat. The claim was a running account for materials which passed into the vessel permanently during the progress of its construction. All the items in the account relate to one transaction, — the building of the boat, — and constitute it a continuous account, regardless of intervening balances. In such case it seems to us that the furnishing of the materials should be

deemed a continuous account, rather than as independent transactions. It is different when the various transactions are separate and independent, and there are payments of some one or more of them without regard to the others. To sustain the contention of the defendant, we must consider each item in the account as a separate and distinct transaction, constituting an independent cause of action, and necessitating its commencement against the boat, in order to save the lien, within one year after the sale of each item, notwithstanding the items in the account were for materials furnished for the same general purpose, namely, the construction of the boat, and stand related to it as one transaction. Nor do we think there is anything in the *City of Salem*, 31 Fed. Rep. 616, in conflict with this doctrine. The language of Mr. Justice DEADY, that "whenever a check or order of the owners was paid, under the statute giving a lien, such payment constituted a cause of action, and unless asserted or enforced within a year the lien is lost," indicates that he regarded such payment as a separate and distinct transaction. The statement of facts is meager, and this inference is more reasonable than the other. This result is decisive of other objections that were raised under section 3706, and eliminates their consideration from the case.

5. The next objection relates to errors assigned in striking out on motion portions of the second amended answer. So far as the motion went to matters already in issue by the denials in the answer, there was no error. The grounds of the motion were, that the answer, in the particular specified, was sham, frivolous, and irrelevant. The provisions of the Code in reference to such motions are found in sections 75 and 85 of Hill's compilation. Of two separate defenses contained in the answer, one is alleged as a defense, and the other as a partial defense, to the cause of action. The first was struck out, as appears from the motion, on the ground that "the matters and

things therein alleged are sham, frivolous, irrelevant, and immaterial, and do not constitute a defense or counter-claim to the cause of action"; and the second was struck out for like reasons. The error complained of is that the motion was used to test the sufficiency of these defenses instead of a demurrer. Counsel for the plaintiffs concede that if the defenses named had been separately pleaded, and had been complete in themselves, the better practice would have been to reach the objection by demurrer. It is insisted, however, that if the defenses stricken out in the answer failed to state facts constituting a defense, partial or otherwise, the defendant claimant has sustained no prejudice, and that the proof of them could not make a defense. There can be no doubt that the object of a motion to strike out is not to perform the office of a demurrer. There are many decisions to the effect that an answer may be insufficient in form or substance without being frivolous. To be frivolous it must appear so incontrovertibly from the mere reading or bare statement of it. If an argument is required to show that the pleading is bad, it is not frivolous. RYAN, C. J., said: "When it needs argument to prove that an answer is frivolous, it is not frivolous and should not be stricken out. To warrant this summary mode of disposing of the defense, the mere reading of the pleading should be sufficient to disclose, without debate and beyond doubt, that the defense is sham and irrelevant": *Cattrill* v. *Cramer*, 40 Wis. 555.

6. So, too, it is held that where there is a semblance of a cause of action or defense set up in the pleading, its sufficiency cannot be determined on motion to strike it out as redundant or irrelevant. In *Walter* v. *Fowler*, 85 N. Y. 625, it is said: "There is a semblance of a cause of action stated in the answer. Whether it was a valid counter-claim within the Code, is a question which should be determined either by demurrer or by motion on the trial, and not by a summary motion to strike it out as

redundant or irrelevant. The two remedies are not concurrent." And again: "It may very well be that this constitutes in law no defense, but the sufficiency of a defense cannot be determined on a motion to strike out a pleading. To reach such a defect is the appropriate office of a demurrer." It must be conceded, then, that the proper mode to test the sufficiency of a cause of action or defense is by demurrer. Nor is there any doubt but that the rule should be enforced, unless it is manifest that the defense, upon its face, is clearly insufficient in law, and can serve no other purpose than to delay the litigation. We are unwilling to say that the bare inspection of these defenses in the answer warrants us in declaring them to be frivolous, but we are satisfied that they are untenable, and plainly so. The motion has been treated as a demurrer, and so argued to us, and it will only unnecessarily prolong the litigation for us to delay our decision. In view of these considerations, we have concluded it is better to treat the motion as a demurrer, and pass upon the defenses with the hope that our decision may not lead to any relaxation of the proper practice in such cases.

7. Our statute (section 3690) provides that "every boat or vessel * * * constructed in this state * * * shall be liable and subject to a lien * * * for all debts due to persons by virtue of a contract express or implied, with the owners of a boat or vessel, or with the agents, contractors, or sub-contractors of such owner, or any of them, or with any person having them employed to construct * * * such boat or vessel on account of labor done or materials furnished by mechanics, tradesmen or others, in the building * * * such boat or vessel." The contract of the owner with the contractor necessarily authorizes the contractor to procure materials to construct the boat. This being so, he was authorized to contract with the plaintiffs to furnish the material necessary to be used in the construction of the boat. The plaintiffs allege that at the

instance of the contractor they furnished materials which were used in the construction of the boat, and that they thereby acquired a lien thereon for the amount specified. The defendant seeks to defeat the lien by alleging that it was agreed between the company and Steffen, by the contract, that it should pay to him a certain sum therein named for all the work done and materials furnished in the construction of the hull of the steamboat, and that "such amount should be in full of all claims of any kind whatsoever against the hull of the said boat." It is also alleged that payments were made to the contractor as provided in the contract, and that there was nothing due him at the time of the commencement of the action.

It is claimed that the allegation that it was a part of the contract that the payments so made should be in full of all claims of any kind whatsoever is fatal to the lien of the plaintiffs. The statute gives the lien upon furnishing the materials as a means of securing payment therefor. The language is that the "boat shall be liable and subject to a lien" for a debt due the material man by virtue of a contract express or implied with the contractor on account of materials furnished in the building of such boat. The intent of the legislature that the material man shall have a lien on the boat or vessel is plainly and definitely declared, nor is there any suggestion of implied conditions or limitations to the right of lien as thus given. Hence, as BARCLAY, J., well said: "We have no right to assume, without more, that the statute thereby meant to say that such a lien should only exist when the owner had not fully paid the contractor, and in no wise for more than the original contract price": *Henry Coatsworth Co.* v. *Evans,* 97 Mo. 47 (3 L. R. A. 332; 10 S. W. Rep. 868). The lien is an incident which the law attaches to the transaction, and can be waived or discharged only by an agreement or understanding to that effect on the part of the person entitled to it. In the *City of Salem,* 7 Saw. 481 (10 Fed. Rep.

843), Mr. Justice DEADY, in construing this identical stat-
tue, said: "It matters not, so far as the claims of the
libellants are concerned, what controversy exists between
Steffen and his contractors, or how the respondent is in-
volved in it, whether as garnishee or otherwise. If they
performed the work on the respondent's boat, as they allege
they did, they have a lien thereon for its value,—irrespec-
tive of the state of the accounts between him and Steffen,—
and are entitled to maintain this suit to establish their
claim, and enforce such lien by the sale of the boat." The
statute makes the boat' liable to the lien of the laborer or
·material man, if he complies with the statute, notwith-
standing the owner has paid the contractor. In *Atwood* v.
*Williams*, 40 Me. 409, the laborer's lien was enforced,
though the contractor had been previously paid. "The
aim of the law," as BARCLAY, J., said, "is to protect those·
whose material or labor has enhanced the value of prop-
erty, against the business misfortunes or possible frauds of
any middle-man, at whose instance they furnished the
same. It is made the interest of the owner, for the pro-
tection of his property from liens, to see that all valid debts
of that nature are discharged by those who incur them.
The law makers considered that with the exercise of ordi-
nary prudence, the owner would be in a better position to
guard against loss under this law than sub-contractors
would be without the law. The owner may stipulate with
the contractor to defer his payment until the time has
passed for filing other liens, or to pay the sub-contractors
himself, or he may take security or any other suitable steps
that circumstances may require for the protection of him-
self, and of those whose labor and materials enter into the
building, upon its credit": *Ainslie* v. *Kohn*, 16 Or. 371
(19 Pac. Rep. 97); *Laird* v. *Moonan*, 32 Minn. 358 (20 N.
W. Rep. 354); *Lonkey* v. *Cook*, 15 Nev. 58; *Albright* v.
*Smith*, 51 N. W. Rep. 590; *Bardwell* v. *Mann*, 46 Minn. 285
(48 N. W. Rep. 1120); *Spokane Mfg. Co.* v. *McChesney*, 1

Wash. St. 609 (21 Pac. Rep. 198). These authorities lead to the conclusion that laborers or material men are not affected by the state of the account between the owner and contractor.

The judgment is AFFIRMED.